In the Matter of SIGMUND HORKIMER, an Attorney, Respondent.

First Department, November 3, 1933.

*Edgar M. Souza* and *Nathan Greene* of counsel [*Einar Chrystie,* attorney], for the petitioner.

Respondent in person.

FINCH, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York on November 8, 1897, at a term of the Appellate Division of the Supreme Court, First Department.

By the petition herein he is charged with professional misconduct in that in five separate and specific instances he neglected the interest of his client and rendered no services in return for fees paid him. He is also charged with converting the money of a client.

The respondent answered, and the matter was referred to a referee to take testimony with respect to the charges, and report the same to this court together with his opinion thereon. The learned referee has duly reported, finding the respondent guilty as charged with respect to three of the charges, including the charge of conversion. On two of the charges the referee found the evidence insufficient.

The matter is now before this court upon motion of the petitioner that the respondent be adjudged guilty of professional misconduct and that the court take such action as it may deem just and proper.

It is sufficient to say that the record herein fully sustains the findings of the referee, and shows the respondent to have been guilty of misconduct as an attorney, as follows:

(1) In 1924 a suit was brought against Julius Goldman on behalf of an infant named Dalaginsky for $50,000 damages on account of personal injuries. Goldman retained the respondent to defend this suit, which the respondent agreed to do for a fee in full of $250, which was paid. Goldman was never requested to attend court or advised by the respondent that the case had been reached for trial. About a year after the respondent had been retained, he told Goldman that the case had been thrown out of court and the complaint dismissed and asked Goldman for a further payment of $50, together with certain alleged disbursements, which Goldman paid. Goldman heard nothing further until October, 1930. He was then told by another attorney whom he knew, Carlyle Finkelstein, that while in court he had heard the case of Dalaginsky against Goldman called and no one appeared to answer on behalf of the defendant. Goldman immediately communicated with the respondent, who told him that for a further payment of $30 the respondent would have the case dismissed.

Thereafter Goldman paid to the respondent by check on October 28, 1930, the sum of $30. The respondent, however, failed to take any further action and Finkelstein, who continued to watch the case, had it adjourned from time to time, no one representing the respondent having appeared on behalf of the defendant. Finkelstein, thereafter, met the respondent in court and the latter said that he would send to Finkelstein all the papers in the case together with a consent to substitution. The respondent, however, failed so to do, and Goldman thereafter, on December ninth, sent the respondent a registered letter requesting him to turn over the papers and at least the $30 which had been paid him. To this letter no reply was received. Goldman thereafter called the matter to the attention of petitioner's committee on grievances. Letters were written to respondent asking for an explanation, to which no replies were received.

(2) Mrs. Pauline Dietz died in 1927 leaving a will whereby she left her husband, John Dietz, a life interest in a house and lot situated in New York city. In June or July, 1927, Dietz retained the respondent to probate the will and for that purpose delivered to him estate papers including the will and the deed to the property, and at the same time paid him the sum of $250 in cash, which it was agreed would be the respondent's fee in full for his services. Subsequently, at the request of the respondent, Dietz paid to him further sums aggregating $14 upon the representation of the respondent that they were needed for taxes and other expenses. About a year after the retainer of the respondent, Dietz requested the return of the deed and the other papers. The respondent thereupon said the estate was in process of settlement and as soon as completed he would return all papers to Dietz. Thereafter Dietz from time to time repeatedly demanded the return of the papers, but although respondent promised to return them he failed to do so. Thereafter, Dietz received a letter from the Department of Taxation and Finance of the State of New York requesting a sworn itemized statement of the property left by his wife with the debts and other expenses, for the purpose of determining the transfer tax. Upon receipt of this letter, Dietz immediately turned it over to the respondent who informed Dietz that he would attend to the matter for him, but failed to do so. Subsequently, Dietz received a further letter from the Department of Taxation and Finance stating that no reply had been received to the previous letter and unless the information requested was received, the matter would be put in the hands of the Department's attorney with instructions to institute transfer tax proceedings. When Dietz received this letter he immediately called the matter to

the attention of the committee on grievances. When the records of the Surrogate's Court were examined it was discovered that, beyond filing the petition for probate of the will on July 19, 1927, no further steps whatever had been taken by the respondent. Thereafter the attorney for the committee on grievances wrote to the respondent on April 20, 1931, requesting an explanation but no reply was received.

(3) In October, 1928, W. H. Wortham, president of the Congamond Holding Company, Inc., on behalf of said company secured a mortgage loan of $10,000 from one Benjamin Solomon, on premises located at 42 West One Hundred and Thirty-fifth street, New York city. The respondent was the attorney for the lender and was paid his fees by Mr. Wortham on behalf of the Congamond Holding Company. The transaction was closed on October 25, 1928, and at that time there was left with the respondent by Mr. Wortham the sum of $827 to be used in accordance with the terms of the receipt which respondent gave to Wortham, reading as follows: " Received from Congamond Holding Company, Inc., the sum of $827 for the payment of the 1926, 1927 and 1928 water rates, together with penalties and the first half of 1928 land tax and interest thereon, all on premises 42 West 135th Street. Excess, if any, to be repaid to Congamond Holding Company, Inc. (Sgd.) Sigmund Horkimer."

Thereafter Wortham was notified by the first mortgagee that the taxes had not been paid and Wortham immediately called the matter to the attention of the respondent. The respondent admitted that he had not paid the taxes, but promised to make payment within a few days. He failed to do so, however, notwithstanding the repeated demands of Wortham. Subsequently, Wortham was obliged to pay the taxes but was unable to obtain the return of any part of the money left with the respondent until after a Magistrate's Court proceeding had been instituted by Wortham and a summons served upon the respondent in April, 1929. A letter subsequently written respondent by the attorney for the committee on grievances remained unanswered and the respondent failed to appear before the petitioner's committee on grievances or to file an answer to either of the charges pursuant to the request in the formal notice which had been personally served on him.

From the foregoing it is clear that the respondent is utterly wanting in that responsibility and loyalty which an attorney owes to his clients and which are fundamental attributes of an honorable profession.

Respondent should be disbarred.

MERRELL, MARTIN and TOWNLEY, JJ., concur.

Respondent disbarred.