## IN RE DISBARMENT OF ARCHIE L. GENNOW.[1]

December 8, 1939.

No. 31,373.

*Magnus Wefald,* for State Board of Law Examiners.
*Archie L. Gennow, pro se.*

[1]Reported in 289 N. W. 887.

PER CURIAM.

This proceeding for the discipline of a member of our bar is before us on original and supplemental complaints of misconduct, after hearing before the Honorable D. H. Fullerton, judge of the fifteenth judicial district, as referee. We decide the matter on his findings, there being no settled case such as is provided for by Rule XXIV.

After hearing the evidence *pro* and *con* under the original complaint, the referee, in elaboration of his findings, frankly expressed his opinion that the misconduct disclosed did not justify disbarment. But, after hearing the evidence supporting the second complaint and making his findings thereon, he reluctantly concluded that the public interest required that respondent be no longer permitted to "continue the practice of law." In that view we, with equal reluctance, agree.

The facts are these. In January, 1936, a firm of Minneapolis lawyers put in Mr. Gennow's hands for collection promissory notes of the face value of $110. He was promised a contingent fee of 25 per cent. But he was directed to get judgment against the debtor, even though the notes did not appear readily collectible. On that basis he accepted the business. He did not enter judgment. He did not even make answer to five letters of inquiry from his Minneapolis correspondents, written during the period from April to July, 1936. He did make some effort to collect. The matter dragged on until 1937, when respondent belatedly discovered that the debtor had moved to Wisconsin. Thereupon suit in this state became impossible.

In August and again in November, 1936, the matter having been referred to the committee on ethics and legal education of the Minnesota State Bar Association, its secretary wrote respondent concerning the complaint of his Minneapolis correspondents. Respondent, so the finding is, "believing he had made proper effort" in handling the claim, did not reply.

By December, 1936, the matter had been referred to the State Board of Law Examiners. Its secretary on that day gave notice to respondent of the complaint against him. December 17, he

wrote the secretary, "making explanation and promise of further effort to collect" and that a subsequent report would be forthcoming. None was made.

There is another charge in the original complaint, which we pass without further comment than to say that while it is not serious because it does not show that the client suffered, it does furnish further evidence that Mr. Gennow was habitually inattentive to his clients' business.

Another charge has to do with a real estate mortgage and note in 1933 placed with respondent for collection. Therein he is found to have made much effort and to have met with much difficulty. Partial payments he did get in July, 1933, but retained the same without report to his client in the hope that an additional and larger amount would be collected in October. Not until after complaint to the State Board of Law Examiners and their notice to him in February, 1934, did respondent remit $175 "with explanation of effort and account of collection to client." Just how he explained his unconscionable delay in remitting does not appear. He "retained practically no fee in the belief he could later make additional collection which he was unable to make." In July, 1934, he returned the notes and mortgage to his client.

Going now to the supplemental charge, we find further and conclusive evidence of such habitual deficiency in his regard for and devotion to the interests of clients that disbarment is inescapable. In May, 1933, respondent was retained, for a fee not to exceed $50, to probate an estate. The only asset was a promissory note for $900, secured by a real estate mortgage, the land then being occupied by the mortgagor. For four long years, the conclusion was unavoidable, respondent gave the matter almost no attention. He did procure the appointment of an administrator. No inventory and appraisal of any kind was filed, and there was no attempt thereat until at the end. Respondent then came in with what he says was a copy of the original appraisal. Maybe so, but, without going into details, the result was that all the proceedings in the probate court had to be set aside and the matter put into other and more diligent hands.

This probate matter was the thing which proved beyond the indulgence of the referee.  It is equally beyond ours.

The misconduct established by the evidence in support of the original complaint was attempted to be condoned upon the ground that while respondent is, in the words of the referee, "honest and conscientious, * * * he has been careless concerning correspondence."  The thought was that "the extent of the [carelessness] here shown may be found more frequently in an office in a small town where practice does not permit the employment of stenographers and clerks common in offices in larger cities."  However that may be, it does not even tend to excuse the persistence of inattention presented by this case.  There is no showing of illness or absence from office due to other cause which would justify respondent's professional nonfeasance.  The probability is that he had a small practice.  All the more reason for giving every detail diligent attention.  The small is built into the large practice only by diligent service of the few clients and by efficient handling of their small matters.  The attorney who cannot be diligent in serving a few clients and in the dispatch of little matters certainly will be no more so in serving many clients and in the dispatch of important business.

So much for the charges covered by the original complaint.

In agreement with the referee, we too would be disposed to indulgence were it not for the cumulative and convincing effect of the utterly inexcusable neglect and incompetence in serving the client who retained him for the probate proceeding.

An attorney's oath on admission puts him under the solemn obligation to delay no cause for lucre or malice.  He is put under equally binding obligation faithfully to serve his clients to the best of his ability.  That implies that he shall have an equipment of learning and ability that will enable him to serve clients as they reasonably expect to be served.  Here there is a showing that makes unavoidable the conclusion that respondent, over a long period, has demonstrated an utter lack of needed capacity properly to serve clients.  The deficiency may not be due to lack of learning.  It is more likely attributable to a fixed and irremovable

habit of dilatoriness. No other conclusion is possible, in view of respondent's repeated inattention to the fact that his misconduct had been so persistent and damaging as to be the subject of complaint to the ethics committee of the state bar association. After the matter became the subject matter of formal complaint here, he made no resort to dilatory or obstinate tactics (for contrasting conduct see In re Disbarment of McDonald, 204 Minn. 61, 282 N. W. 677, 284 N. W. 888). That is subject for deserved commendation but not sufficient occasion for condonation.

Judgment of disbarment must follow.

So ordered.