# IN RE DISBARMENT OF ESSIE W. WILLIAMS.[1]

May 3, 1946.

No. 34,026.

[1]Reported in 23 N. W. (2d) 4.

*Randall, Smith & Blomquist,* for petitioner.

*Essie W. Williams (pro se)* and *Bryce E. Lehmann,* for respondent.

PER CURIAM.

The petition and accusations filed by the Committee on Practice of Law of the Minnesota State Bar Association against respondent, Essie W. Williams, asking for her disbarment or discipline as an attorney at law, were referred to the Honorable Karl Finkelnburg, a judge of the third judicial district, pursuant to Minn. St. 1941, § 546.36 (Mason St. 1927, § 9319), to hear the evidence and make findings of fact. After a careful consideration of the evidence adduced before the referee, we find his findings of fact, which are adopted by this court, to be clearly sustained by the evidence.

Respondent, who was duly admitted to the bar of Minnesota in 1906, has been engaged in the practice of law since then, with her residence and law office in St. Paul. In 1916, she entered into an oral agreement with a client, one Mrs. Luella Webb, whereby, for a consideration of $10,000 cash money then placed in escrow for payment to respondent by the escrow agent upon Mrs. Webb's death, respondent agreed to perform all legal services requested by Mrs. Webb during her lifetime and to advise and guide her in disposing of her property so that it would not be subject to tax. Respondent rendered legal services from time to time up to 1932. From 1932 until 1936, when Mrs. Webb died, respondent rendered no services, although she was legally bound to do so. Shortly after Mrs. Webb's death, the escrow agent delivered the $10,000 to respondent, but the latter neither reported nor included that amount in her 1936 state income tax return. No federal income tax return whatever was made by her in that year. At no time between 1916 and 1936 was any part of said $10,000 reported as income to either the federal or state authorities. The Minnesota board of tax appeals found specifically that her failure to report said amount *as business in-*

*come or as nontaxable income* was a wilful and deliberate attempt on her part to conceal receipt of the money and to evade the tax thereon. The referee found:

"11. That the failure of respondent to report said sum as an income either to the Federal or State Governments was a wilful and deliberate attempt on her part to conceal the receipt of said amount of money and to evade the tax thereon."

The referee further found:

"12. That on January 26, 1939, respondent was attorney for Miss Estella Simmons, and had been attorney for Miss Simmons for many years prior thereto. On said day Miss Simmons informed plaintiff that she, the said Estella Simmons, was soon to undergo a surgical operation which she might not survive. Respondent thereupon agreed to participate in a certain scheme for the distribution of Miss Simmons' property, in the event of her death, so as to avoid probate proceedings. The arrangement was that one Charles A. Powell should take said property, and should give to each of some thirty intended recipients negotiable bonds or cash in amounts set opposite their respective names in a certain list or written instructions which Miss Simmons had prepared. The remainder of her property was then to be divided equally among five residuary recipients designated in said written instructions. Respondent undertook to make such distribution in the event that said Powell died or was unable to act. The value of the property to be distributed was more than $500,000.

"13. That in furtherance of said scheme, Miss Simmons, upon advice of respondent, executed a bill of sale transferring to said Powell all her household goods and personal effects, of every nature. That she also conveyed to him all her real estate, at or about the same time. That she did not, however, assign or transfer to him any of her bonds or other securities; but that the same, together with a considerable amount of cash, were then contained in a certain safety deposit box in the First National Bank of St. Paul, numbered C-4690. That said box had been leased in the names of

Estella Simmons, Charles A. Powell and Addie Stephan on June 20, 1938; and Miss Simmons gave said Powell the key to it on or about January 26, 1939.

"14. That on February 8, 1939, substantially all of said cash, bonds and other securities were contained in a smaller safety deposit box in said bank, numbered D-143, while said deeds, bill of sale, written instructions and other papers belonging to Miss Simmons remained in the larger box, numbered C-4690. Said Powell had procured the smaller box in the names of himself and respondent on January 27, 1939, and respondent had signed the bank's card for it on or about that day.

"15. That on February 8, 1939, said Powell had been informed, and he in turn had informed respondent, that said Estella Simmons was about to die. That said Powell and respondent thereupon went to said bank and opened both said boxes. That respondent then wrongfully took from the smaller box certain United States Bonds of the par value of $25,000 and cash in the sum of $5,000; and told said Powell that she was taking it as fees. That said Powell then removed the rest of the cash and bonds and took them to his home for the purpose of dividing and distributing them among the designated recipients.

"16. That respondent was not designated as a recipient in said written instructions, and that said instructions made no provision for paying her any fees. That she had no claim for fees for past services, except that she afterwards asserted a claim for $3,000 for advising Miss Simmons regarding the aforesaid scheme of distribution on January 26th, and a claim for $500 for advising her regarding some letters that she had received from a niece.

"17. That said Estella Simmons died on February 11, 1939. That soon thereafter said Powell informed respondent that he had made distribution to all the specific recipients except five, and that he was unable to complete the task. He then gave her five sealed envelopes, addressed respectively to said five, and asked her to deliver them. She accordingly delivered said five envelopes to five persons who came to her office and claimed them; but she did not examine

the contents of the envelopes; neither did she take any pains to establish the identity of the persons to whom she delivered them.

"18. That sometime after taking said $30,000 respondent declared that she had undertaken to use said sum to pay gift taxes, or estate or inheritance taxes, that might be assessed against the specific recipients, and to pay the costs of litigation to establish the validity of the distribution as gifts causa mortis, and that what remained was to be her fees for services in that regard. That respondent, however, never made any computation of such taxes, other than a rough preliminary estimate; that she took no steps to have them declared or assessed; that she kept no record of the persons to whom distribution was made or of the property distributed.

"19. That after making distribution to the specific recipients, as aforesaid, said Powell became alarmed and delivered the residue of the property to the administrators of the estate of said Estella Simmons. That respondent thereupon advised said Powell to destroy said written instructions; and the same were accordingly destroyed.

"20. That thereafter, about April 24, 1939, respondent commenced an action in the District Court of Ramsey County, Minnesota, against said administrators and others for a declaratory judgment that she held said $30,000 in trust for the purpose of paying taxes and expenses of litigation as aforesaid; and in said action respondent disclaimed any personal interest in said property, because the statute relating to conversations with a deceased person prevented her from testifying thereto.

"21. That pending said action the said United States bonds of the par value of $25,000 and cash in the sum of $5,000 were deposited by respondent with the First Trust Company of St. Paul, for safe keeping, and the receipt therefor was delivered to the Clerk of said District Court to be held subject to the further order of the Court."

On February 21, 1940, the Ramsey county district court made its findings of fact, conclusions of law, and order for judgment in

the above entitled action to the effect "that plaintiff was not entitled to hold, and did not hold, the currency and bonds in the face amount of $30,000, as Trustee, for the uses and purposes of paying inheritance taxes on, and sustaining by legal action the validity of, gifts to be made by Estella Simmons, deceased," and further determining "that said personal property was, and is, an asset of the estate of Estella Simmons, deceased, to be administered and distributed by the Probate Court." The order for judgment of the Ramsey county court further provided for the delivery of said $30,000 to the administrators of the estate. From an order denying her motion for the amendment of said findings of fact, conclusions of law, and order for judgment or for a new trial, respondent appealed to this court. Thereafter judgment was entered, and from this judgment respondent also appealed. The judgment was affirmed by this court on July 11, 1941. Williams v. Jayne, 210 Minn. 594, 299 N. W. 853. The report of that decision is made a part of the findings of fact herein.

The referee further found:

"23. That on or about October 9, 1940, an action was commenced by said administrators against said respondent, in said District Court, to recover certain property belonging to the estate of said decedent and alleged to have been converted by said respondent. Said action was tried and there was a directed verdict for the defendant on June 7, 1943.

"24. That the professional conduct of the respondent was brought to the attention of the Committee on the Practice of Law of the Ramsey County Bar Association in September, 1941, but no action was taken at that time because the aforesaid suit brought by the administrators against respondent was then pending. That on July 23, 1943, after investigation, and shortly after the determination of said suit, said Committee referred the matter to the State Board of Law Examiners with a recommendation for removal or suspension. Said Board, after consideration, decided to start disciplinary proceedings; but nothing was done until December, 1944, when the Board's file was given to the Committee on

Practice of Law of the Minnesota State Bar Association, said Committee having taken over the disciplinary functions of said Board. The last named Committee thereupon conducted an investigation of its own and commenced this proceeding in January, 1945.

"25. That respondent has not been prejudiced by said delay, except that her recollection of some details of the transactions under consideration has been impaired by lapse of time. She did, however, testify fully, regarding all material aspects of said transactions, in the litigation hereinbefore mentioned; and she has had transcripts of her testimony to refresh her memory. Upon the hearing in this proceeding she did not appear to be materially inconvenienced by want of memory. That she did not preserve any work-sheets, records or memoranda pertaining to such transactions; and that nothing of that nature has been lost or destroyed in the interim."

Cogent and compelling evidence clearly establishes four acts of professional misconduct, namely:

(1) Respondent's wilful and deliberate attempt to conceal from federal and state tax authorities her receipt in 1936 of $10,000 for the express purpose of evading payment of income taxes thereon.

(2) Respondent's wrongful taking from the estate of Estella Simmons of the sum of $30,000 under the pretext that said sum was in payment of professional fees.

(3) The wilful misconduct of respondent in advising and procuring the destruction of Miss Simmons' written instructions for the distribution of her estate, which instructions respondent well knew would be required in evidence in subsequent litigation or other legal proceedings.

(4) Respondent's unprofessional conduct, constituting nothing less than gross negligence and sheer incompetence, in arranging for and participating in the distribution of an estate of over $500,000.

Respondent asserts that no consideration should be given to the income tax matter, since in preparing her personal tax re-

turns she "was in no way acting as an attorney." Her contention is without merit. We have heretofore held:

"* * * 'The weight of authority holds that misconduct of an attorney outside his professional dealings may afford good ground for disbarment.' * * * 'Professional honesty and honor are not to be expected as the accompaniment of dishonesty and dishonor in other relations. So it is that we, in common with other courts, hold, as did Lord Mansfield more than a century ago, that misconduct, indicative of moral unfitness for the profession, whether it be professional or nonprofessional, justifies dismissal as well as exclusion from the bar.' " In re Disbarment of Cary, 146 Minn. 80, 86, 177 N. W. 801, 803, 9 A. L. R. 1272.

Regardless of respondent's allegation that she did not believe the $10,000 to be taxable income, we have the significant fact that she made no report of it as nontaxable income. Her contention that said sum, having been earned over a period of years, constituted capital assets and not income, merits little consideration, for three reasons: (1) If capital assets, it must have been earned sometime; (2) irrespective of when the service was rendered, she never became entitled to it until the death of Mrs. Webb in 1936; (3) and, finally, she made her income tax returns on a cash accrual basis and should therefore have reported the $10,000 in her state return for 1936.

■ Respondent was not justified in appropriating $30,000 to herself for fees or for any other purpose. Her failure to make a proper computation (aside from a rough estimate) of taxes, her failure to have such taxes declared or assessed, and her failure to keep a record of the persons to whom the assets were distributed, coupled with her advice to Powell to destroy the written instructions, negative any intent to use part of the $30,000 to pay gift or inheritance taxes which might be assessed against Miss Simmons' estate. At the time she removed this money from the safe-deposit box she had no right to any fees for past legal services. The wholly unlawyerlike and fantastic manner in which the estate was to be distributed would justify no such fee, and there is nothing to

justify the manner of taking the money. The written instructions made no provision for respondent to be a recipient of funds or for the payment to her of fees. Her contradictory testimony deserves little credence. In the action of Williams v. Jayne, 210 Minn. 594, 299 N. W. 853, wherein respondent unsuccessfully sought a declaratory judgment that she was a trustee of the $30,000 for the payment of gift taxes and expenses of litigation, she testified that she had said to Miss Simmons:

"There is sure to be a fight there is no question about it at all * * *. More than that some of these other people may join in with Mrs. White to try and set the gifts aside * * *."

In the same connection she testified as to her arrangements with Miss Simmons:

"* * * she told me that she wanted me to take charge of all the law work; I had been her attorney and done every bit of her law work for thirty years and to defend any actions that were brought to set aside these gifts; bring any action that was necessary to uphold the validity and legality of these gifts and take thirty thousand and pay the state gift tax and Federal estate tax on the gifts except to the five residuary donees."

Prior to giving the foregoing testimony, respondent had told Powell when she took the $30,000 that it was to be her fee, and she said nothing about using part of it to pay taxes. She seeks to excuse this statement to Powell by saying that it "was not a statement made by her under oath" and that "she said what she did" because "Powell was scared." As to the written instructions, she admits that she said to Powell: "You had better destroy it and save trouble." In giving Powell this advice, she seeks to excuse herself by saying that she spoke in haste, and she claims that her statement is not material because at the time she was not acting as attorney for Powell. Respondent's testimony, of which the above is a sample, shows a lack of good faith, to say the least. Why should she tell Powell that the $30,000 was for fees only and hesitate to say anything about taxes? Why should Powell become "scared"

if he were told that respondent had a fund sufficient to pay such taxes? Why should she, as a member of her profession, seek to avoid responsibility for her words by saying that she was not under oath? When she told Powell that the $30,000 was for fees, she did so in her capacity as a lawyer who had promised her client to look after all legal work pertaining to the distribution of the client's estate. Powell, as a trustee or representative of Miss Simmons and her estate, was entitled at all times to rely upon respondent for professional advice and for accurate information without putting respondent under oath. The fiduciary relation between attorney and client is based on mutual confidence. When respondent advised Powell to destroy the written instructions, she was acting in a professional capacity as a lawyer. Accordingly, she must be held to strict accountability. Professional responsibility follows the lawyer in all his work and is not something to be shed as a matter of convenience or whim. Respondent alleges in her brief that "no attorney ever agreed to stand behind the division of an estate of over half a million dollars, for nothing." Respondent cannot assert her professional role for the collection of fees and forsake it to avoid responsibility for her acts.

■ Respondent cannot escape responsibility for wilfully advising the destruction of the written list left by Miss Simmons to govern the distribution of her estate. In telling Miss Simmons that "there is sure to be a fight," she clearly indicated that she knew the written instructions would most likely be required in subsequent litigation. They were undeniably needed in connection with the proceedings for the determination of taxes. The only natural and probable inference to be drawn from respondent's conduct is that she intended such instructions to be destroyed and made unavailable in the litigation likely to follow. The wilful participation by an attorney in the destruction or suppression of evidence which he knows may be required upon a trial, hearing, or other legal proceedings constitutes a breach of professional duty and subjects such attorney to discipline. See, State Board of Examiners in

Law v. Lane, 93 Minn. 425, 101 N. W. 613; Minn. St. 1941, § 613.47 (Mason St. 1927, § 10024).

■ The unprofessional conduct of respondent, which not even the alchemy of extreme charity can transmute into anything less than gross negligence and sheer incompetence, in arranging for and participating in the distribution of Miss Simmons' estate, reveals a total unfitness to practice law. The fantastic arrangements which she made, or to which she at least gave professional approval and assistance, for the disposal of an estate of over $500,000, reflected scarcely more care than would be used in distributing a peck of apples. The assets were distributed without keeping proper records, without establishing with reasonable certainty the identity of the persons to whom they were delivered, and without taking steps to assure the payment of taxes. Respondent has displayed a complete lack of professional responsibility in the discharge of her duties as a lawyer.

■ Respondent complains of petitioner's delay in the prosecution of these proceedings. There has been undesirable delay, but, under the circumstances of this case, not such as to prejudice respondent. Disciplinary proceedings in all cases, however, if for no other reason than that of protecting the public, should be prosecuted with promptness. We also find nothing to indicate that respondent failed to receive a fair hearing before the Practice of Law Committee.

■ "The purpose of disciplining an attorney is not to punish him, but to guard the administration of justice and to protect the courts, the profession, and the public." In re Application of Smith for Reinstatement as Attorney, 220 Minn. 197, 199, 19 N. W. (2d) 324, 325.

Fully do we realize that the disbarment of an attorney brings serious consequences to the individual, but these consequences are the fruits of his own wrongdoing.

We find that Essie W. Williams is guilty of such professional misconduct as to merit and require her disbarment as an attorney at law of this state.

Let judgment of disbarment be entered.

Mr. Chief Justice Loring and Mr. Justice Christianson took no part in the consideration or decision of this case.