# MARYLAND STATE BAR ASSOCIATION, INC. *v.* PHOEBUS

[Misc. Docket (Subtitle BV) No. 9, September Term, 1975.]

*Decided November 21, 1975.*

354.

The cause was submitted to MURPHY, C. J., and SINGLEY, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

Submitted on the exceptions by *Harry Thomas Phoebus, Jr.*, in proper person.

Court did not wish to hear from the petitioner, Maryland State Bar Association, Inc. *T. Hughlett Henry, Jr.*, and *Ernest M. Thompson* on the answer to the exceptions.

O'Donnell, J., delivered the opinion of the Court.

The respondent Harry Thomas Phoebus, Jr. was admitted to the Bar of Maryland in 1951. These disciplinary

proceedings involve his third citation for professional misconduct since 1966.

Following written complaints from the Register of Wills of Somerset County dated February 22, 1974, and from Mrs. Howard W. Ward dated May 14, 1974, the Maryland State Bar Association (Bar Association) conducted an investigation as provided for in Maryland Rule BV2. After hearings on June 7th and October 24, 1974, before its Committee on Grievances, the Bar Association, pursuant to the provisions of Maryland Code (1957, 1968 Repl. Vol.) Art. 10, § 13, and the provisions of Rule BV3, on April 10, 1975, filed a petition in this Court for disciplinary action against the respondent. The petition, in separate counts, charged the respondent with five specific instances of professional misconduct.

The complaint alleged: (a) that as counsel for Mr. and Mrs. Howard W. Ward, he had failed to file any proceedings in their behalf to foreclose the right of redemption in property purchased by them at a tax sale in 1969; and had represented to them that they could construct a building upon the property purchased — which they did — notwithstanding the fact that the period for redemption of such property had not expired; (b) that although instructed by his client, Howard W. Ward, to dissolve a corporation (H.W. Ward & Sons, Inc.) as of December 31, 1973, he had failed to file the articles of dissolution with the State Department of Assessments and Taxation; (c) that as personal representative named under the will of Margaret Wallace, who died on March 27, 1972, he had failed to properly administer her estate, in that he listed "no assets" in the estate when filing her will with the Register, even though the decedent died owning three parcels of real estate; and that after letters of administration were issued to him on March 13, 1973, he failed to file an inventory until November 20, 1973, and did not close the estate until March 12, 1974, after a complaint was made by the Register; (d) that he had failed to properly administer the estate of Gertrude Williams, who died testate, on November 21, 1970, leaving one parcel of real estate, in that he failed to institute small

estate proceedings to sell the decedent's real estate in order to pay claims filed, including that of the decedent's sister, who had paid the funeral expenses; and that, after the institution of such estate proceedings by him on April 27, 1971, he took no further action until a complaint was filed against him in 1974; and (e) that as attorney for the estate of Harry E. Mathers, who died intestate on May 18, 1972, and as resident agent for the personal representative of the estate, his inaction resulted in a loss of the tangible personal property belonging to the estate, with a resultant removal of the personal representative and payment, under the personal representative's bond, for a loss so sustained by the estate.

On April 14, 1975, pursuant to the provisions of Rule BV3 b, we ordered that the proceedings be transmitted to the Circuit Court for Cecil County and designated Judges George B. Rasin, Jr., H. Kenneth Mackey and Edward D. Higinbothom to conduct the hearing provided for in Rule BV4, and to make a recommendation to us as to the proper disposition of the charges, under Rule BV5 a.

Following a hearing on June 30, 1975, in which the respondent, notwithstanding notice, elected neither to appear nor to contest the charges,[1] the panel of judges unanimously found that each of the five charges had been proven.

The panel concluded, as to the first charge, that he had violated Disciplinary Rule 1-102 (A) (4) "when he advised the Wards [that] they could improve property bought at a tax sale within a period of one year from the date of the tax sale;" and that he also violated Disciplinary Rule 6-101 (A) (3) "when he failed to file proceedings to foreclose the right to redeem and obtain a deed for the property within the period of two years from the date of the certificate of sale." The panel further concluded that Disciplinary Rule 6-101 (A)

---

1. The respondent similarly, notwithstanding notice, failed to appear or offer any evidence at the hearings conducted by the Grievance Committee of the Maryland State Bar Association, Inc. held pursuant to Maryland Rule BV2.

(3) had been violated by the respondent, under charges 2, 3 and 4: (a) "when he failed to conduct the necessary proceedings to dissolve a corporation," (b) "when he failed to expeditiously conduct the estate proceedings [in the Margaret Wallace Estate]" since, having drawn the will which referred to her "home property" and having, after her death, filed the will with the Register of Wills for safekeeping, "he knew or should have known that it was necessary to conduct estate proceedings to clear title to the real estate," and that (c) he had "neglect[ed] a legal matter entrusted to him" when he "took from November 21, 1970 until May 14, 1974 — the date the small estate was finally closed — to conduct small estate proceedings [in the Estate of Gertrude Williams]." In concluding that the respondent had violated DR 6-101 (A) (3) as to the fifth charge, the panel pointed out that he "failed to expeditiously conduct the estate proceedings [in the Estate of Harry E. Mathers] for the personal representative, necessitating the removal of the personal representative and [the] appointment of a successor personal representative;" and that "[h]is conduct caused a loss to the bonding company and probably a loss to those entitled to share in the estate."

DR 1-102, under Canon 1, and DR 6-101, under Canon 6, of the American Bar Association Code of Professional Responsibility, adopted by Rule 1230,[2] respectively provide in pertinent part as follows:

"DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

(2) Circumvent a Disciplinary Rule through actions of another.

---

**2.** Maryland Rule 1230 Promulgated October 13, 1970, effective November 2, 1970 adopted the American Bar Association's Code of Professional Responsibility (adopted by the House of Delegates of the American Bar Association on August 12, 1969); the Maryland State Bar Association adopted the same Code on July 9, 1970. The Code of Professional Responsibility appears in Appendix F of Vol. 9B [The Maryland Rules of Procedure], in Maryland Code (1957, 1971 Repl. Vol.) at page 1007 et seq. See Bar Ass'n of Balto. City v. Marshall, 269 Md. 510, 511 n. 1, 307 A. 2d 677, 678 n. 1 (1973).

(3) Engage in illegal conduct involving moral turpitude.

(4) Engage in conduct involving dishonesty, fraud, *deceit, or misrepresentation*.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law." (emphasis added)

"DR 6-101 Failing to Act Competently.

(A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) *Neglect a legal matter entrusted to him*." (emphasis added)

It is clear from a reading of Code Art. 10, §§ 13 and 16 that disciplinary proceedings will lie, and that sanctions will be imposed, when an attorney is charged with, and there is a finding of, "professional misconduct, malpractice, fraud, deceit, crime involving moral turpitude, [and] conduct prejudicial to the administration of justice." *See Prince George's Co. Bar Ass'n v. Vance*, 273 Md. 79, 84, 327 A. 2d 767, 769 (1974). In all these respects, however, the statute has done little more than enact the general rules upon which the courts of common law have always acted. *Ex parte Secombe*, 19 How. 9, 14, 15 L. Ed. 565, 566 (1857) (*per* Taney, C. J.), quoted in *Rheb v. Bar Assoc. of Balto.*, 186 Md. 200, 203-04, 46 A. 2d 289, 291 (1946). *See also In re Meyerson*, 190 Md. 671, 675, 59 A. 2d 489, 490 (1948).

We do not believe that the respondent's advice to the Wards, in March or April 1969, that they could "go ahead and build on the property" — within a period of one year

from the tax sale — constituted conduct involving either "deceit" or "misrepresentation" within the ambit of the Canons, as well as the statute. *See Prince George's Co. Bar Ass'n v. Vance, supra.*[3] As we view it, this advice given the Wards, was attributable to his professional ignorance of the principles applicable to tax sales, as then set forth in Code (1957, 1969 Repl. Vol.) Art. 81, §§ 92 and 100, or his indifference in acquainting himself with those principles.

We have no difficulty however in concluding, as did the hearing panel, that violations of DR 6-101 (A) (3) were established, as to each of the five charges, by "clear and convincing evidence," the test which we have determined to be the proper one to be applied, both by the hearing panel and by this Court, in disciplinary proceedings. *Bar Ass'n v. Marshall,* 269 Md. 510, 516, 307 A. 2d 677, 682 (1973). Accordingly, we adopt as our own, those findings of fact and conclusions reached by the panel.

We turn next to the sanction to be imposed. After the panel had made its findings of fact and conclusions, the Bar Association introduced evidence of the record of prior disciplinary actions taken against the respondent. This disclosed that the first sanction imposed was his indefinite suspension, ordered by the Circuit Court for Somerset County on September 21, 1966, following his plea of *nolo contendere* in the United States District Court for the District of Maryland, on August 25, 1966, to two counts charging willful failure to file income tax returns in violation of Title 26 U.S.C. § 7203. That suspension was terminated by order of the circuit court on March 1, 1967 (less than six months later), when the Somerset County Bar Association filed no Answer in opposition to the respondent's petition for reinstatement.[4]

---

**3.** For cases where attorneys have been disciplined for neglecting the interests of their clients and, in order to cover up their inattention, have falsely represented that they were prosecuting the client's business, see Annot. 96 A.L.R.2d 823, 845-48 (1964)

**4.** Prior to the adoption by this Court in 1970 of extensive amendments to Subtitle BV (Discipline and Inactive Status of Attorneys) of Ch. 1100 of the Maryland Rules of Procedure, all disciplinary actions instituted against members of the bar were docketed and conducted in the circuit courts of

Such evidence also disclosed that the Bar Association had instituted disciplinary charges against the respondent on March 2, 1971. It was then charged, in two counts: (a) that he, as co-administrator of the Estate of C. Edwin Haymon, had falsely represented to his co-administrator, and to the Orphans' Court of Somerset County, that he had obtained an extension from the Internal Revenue Service for the filing of the federal estate tax return, when in fact he had not, and that as a result thereof the estate became subject to interest and penalties; and (b) that he, retained by Mrs. Edith S. Donalds to institute a law suit against Powell Motors, for having failed to properly title an automobile in her name, as well as that of her husband, had falsely represented to her, as well as to an attorney who inquired of him as to the status of the litigation, that he had instituted suit and "put the case on the docket," when in fact no such suit had been filed. Pursuant to Rule BV3 b this Court ordered that those proceedings be transmitted for hearing to a three-judge panel of the Fifth Judicial Circuit, sitting in the Circuit Court for Anne Arundel County.[5] That panel, following an evidentiary hearing, found that "both charges have been sustained by the evidence and that Mr. Phoebus knowingly and willfully made false statements to a client, to a fellow attorney and to a member of the Orphans' Court;" it concluded that these acts constituted a violation of DR 1-102 (A) (4) in that he engaged in conduct "involving dishonesty, fraud, deceit or misrepresentation," and that he had also violated DR 6-101 (A) (3) in that he had "neglect[ed] legal

---

one of the counties or before the Supreme Bench of Baltimore City. The trial court's ruling was then subject to review by the Court of Appeals upon application by an aggrieved attorney. On October 13, 1970 the disciplinary rules were amended by order of this Court to provide that all charges against a member of the bar shall be filed in and determined by the Court of Appeals. These new rules, however, provide that this Court has authority to transmit the charges to any court in the State for a hearing before a panel of at least three judges who, following such a hearing, are required to return the proceedings to the Court of Appeals recommending, together with the reasons therefor, either that the charges be dismissed or that any of the following types of discipline be imposed: (i) disbarment, (ii) suspension, or (iii) reprimand. *See* Maryland State Bar Ass'n. v. Agnew, 271 Md. 543, 545, n. 3, 318 A. 2d 811, 812, n. 3 (1974).

5. Judges James Macgill, E. Mackall Childs and Ridgely P. Melvin, Jr.

matter[s] entrusted to him." When no exceptions were filed, this Court adopted the recommendation of the panel and passed an Order, dated September 15, 1971, suspending the respondent from the practice of law for a period of three months, dating from October 1, 1971 (Miscellaneous Docket (Subtitle BV) No. 1, September Term, 1971).

In connection with the recommendation made to us in these proceedings, the panel properly took note that the respondent had "failed to appear either in person or by counsel and did not offer any information or evidence" at the committee hearings, or before it, to "in any way justify or explain his conduct with respect to the aforesaid charges;" and that his "conduct with respect to these proceedings appears to be typical of his treatment of the complaints lodged against him." *See In the Matter of Lombard,* 242 Md. 202, 208, 218 A. 2d 208, 212 (1966). "In consideration of the respondent having been disciplined on two prior occasions," the panel expressed the view that "such persistent neglect cannot be condoned" and recommended that the respondent be disbarred. We concur in that recommendation.

Because of the vital role an attorney, licensed to practice, plays in the legal process, he must act with competence and proper care in representing his clients. His admission to the Bar attests to the public that he has met the standards for admission and is competent to discharge his duties toward his clients with strictest fidelity. Once retained he must carefully safeguard the interests of his client, must be diligent in his representation of the client's interest, must give appropriate attention to his legal work, and must observe the utmost good faith in his professional relationship. *See* Canon 6, EC 6-1 *et seq.* His right to continue to practice may be brought into question in a disciplinary proceeding, based upon conduct showing him to be unfit to continue to exercise the duties and responsibilities of an attorney.

The purpose of a disciplinary action is not to punish the offending attorney, but "is to protect the public from one who has demonstrated his unworthiness to continue the practice of law. When this unworthiness is shown to be

present . . . it becomes our sad duty, but nonetheless our obligation, to withdraw the privilege to practice law earlier granted by this Court. To fail to do so will impliedly represent to the public that the attorney continues to possess the basic qualities . . . associated with the members of the bar of this State." *Bar Ass'n v. Marshall, supra,* at 519-20, 307 A. 2d at 682. The purpose of such proceedings has been characterized "as a catharsis for the profession and a prophylactic for the public." *See Maryland State Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A. 2d 811, 814 (1974). As Lord Mansfield stated it in *Ex Parte Brownsall,* 2 Cowp. 829 (1778), the underlying question is "whether, after the conduct of this man, it is proper that he should continue [as] a member of [the legal] profession. . . ." *See Maryland State Bar Ass'n v. Agnew, supra,* at 550, 318 A. 2d at 815.

Where an attorney has been shown to have been negligent, or inattentive to his client's interests, or to have exhibited a lack of professional competency in the handling of a client's affairs, in violation of the canons or of a statute, the imposition of some disciplinary sanction against him may be warranted; the extent of the discipline to be applied, however, is generally dependent upon the severity of the conduct and the particular facts and circumstances surrounding it. In determining the degree of discipline to be imposed for such conduct, it has been held proper not only to consider such circumstances as might mitigate or extenuate the offense, but also proper to consider the attorney's prior history of misconduct and any antecedent sanctions which may have been imposed. *See* Annot. 96 A.L.R.2d 823, 828-29, 853, *supra. Cf. Bar Assoc. of Balto. City v. Dearing,* 274 Md. 66, 332 A. 2d 649 (1975) (where neglect, without any prior history of misconduct, was found to be grounds for a one-year suspension.)

The Supreme Court of Arizona in *In re Greer,* 52 Ariz. 385, 81 P. 2d 96 (1938), where the practitioner was found to have been "grossly negligent" in handling an estate for which he acted both as attorney and administrator, pointed out that an attorney:

"[i]s bound to discharge his duties toward the client

with the strictest fidelity, and to observe the highest and utmost good faith towards him, and if it appears that he has failed to do this, either through willful intent, gross negligence or professional ignorance, he is subject to discipline by the court, which discipline may even extend to denying him the right to further practice his profession." 52 Ariz. at 391, 81 P. 2d at 99.

In *Marsh v. State Bar*, 2 Cal. 2d 75, 39 P. 2d 403 (1934), the Supreme Court of California, sustained the recommended disbarment of the petitioner. After pointing out that the purpose of disciplinary proceedings "is to determine the fitness of an officer of the court to continue in that capacity," the Court went on to state:

"The penalty being designed not to punish the individual but to protect the public, the courts, and the legal profession, is it not clear that, in order to fulfill such purpose, the prior record of an attorney must be taken into consideration in determining his fitness to continue in practice? If the prior attempt at discipline has been ineffective to cure the evil, as witness the fact that the same offense has been repeated, then such further penalty should be imposed as will tend to either effect the reformation of the offender or else remove him entirely from the practice. Thus, although the penalty for a repeated offense may be much greater than would have been imposed were it a first offense, such increased penalty is not a 'meting out' of further punishment for prior acts, as contended by petitioner, but is an adjudication of the attorney's fitness to continue in practice.

"It is well established that mitigating cir-cumstances may be considered in determining the punishment to be imposed in disciplinary proceed-ings, such as the motives and purpose which actuated the accused, his previous good record, . . .

and the fact that he was not guilty of intentional wrong-doing.

"If such mitigating circumstances may be considered in alleviating or lightening the penalty, does it not follow that incriminating circumstances, such as the previous poor record of an accused, his years of practice, knowledge of wrong-doing, repeated misconduct, etc., may likewise be considered in determining whether or not a more severe penalty should be imposed? The fact that an offense is a repetition of offenses for which an accused has previously been disciplined shows that the wrong is not unintentional but is done deliberately with knowledge that such conduct is forbidden and thus it merits a greater penalty." 2 Cal. 2d at 79-80, 39 P. 2d at 405. (citations omitted).

That same court in *Grove v. State Bar*, 66 Cal. 2d 680, 683-84, 427 P. 2d 164, 166 (1967), held that "[h]abitual disregard by an attorney of the interests of [his] clients is ground for disbarment" (under the California statute) "[e]ven when such neglect is grossly negligent or careless, rather than willfull and dishonest, . . . ." These same views were set forth by the California court in *Herron v. State Bar*, 24 Cal. 2d 53, 147 P. 2d 543 (1944); *Stephens v. State Bar*, 19 Cal. 2d 580, 122 P. 2d 549 (1942); *Bruns v. State Bar*, 18 Cal. 2d 667, 117 P. 2d 327 (1941), and *Waterman v. State Bar*, 8 Cal. 2d 17, 63 P. 2d 1133 (1936).

In accord are the holdings by the Supreme Court of Minnesota in *In re Gennow*, 206 Minn. 389, 289 N. W. 887 (1939), where the petitioner was disbarred for "persistent dilatoriness;" and in *In re Williams*, 221 Minn. 554, 23 N.W.2d 4 (1946), where the attorney's "gross neglect" was held to "reveal a total unfitness to practice law." *See also State v. Bonisz*, 231 Wis. 157, 285 N. W. 386 (1939) and *State v. Soderberg*, 215 Wis. 571, 255 N. W. 906 (1934), where the attorneys were found to have been "habitually negligent" in handling matters entrusted to them; and *In re Horkimer*, 239 App. Div. 118, 121, 267 N.Y.S. 245, 248 (1933), where an

attorney, who failed to do anything in connection with the administration of an estate for four years, after probate was granted, was found to be "utterly wanting in that responsibility and loyalty which an attorney owes to his clients and which are fundamental attributes of an honorable profession."

Upon the record presented to us, the respondent, in five separate instances, has been proven guilty of "neglect [of] legal matter[s] entrusted to him." These violations of Disciplinary Rule 6-101 (A) (3) constitute a repetition of the conduct for which — at least in part — the respondent was suspended by this Court in 1971, and conduct similar to that for which the respondent was suspended in 1966, for his own failure, over a two-year period, to file his federal income tax returns. These repeated violations were obviously committed by the respondent with an awareness that such neglect of his clients' interests constituted proscribed professional conduct.

It is apparent that the prior sanctions — by way of suspensions — did not succeed in imparting to him an appreciation of the seriousness of the duties an attorney owes his clients. Such sanctions obviously were ineffective in undertaking to cure the evil of his prior proven neglect, and failed to persuade him to reform his ways and to conform his conduct to the standards demanded of the profession.

We are completely uninformed as to the cause or causes of the persistent neglect by the respondent, over a period of years, as demonstrated in these proceedings. At no time since the institution of the complaints against him with the Bar Association, has he undertaken to even intimate that there exists any evidence which might tend to extenuate his offenses or mitigate the recommended penalty. His sole reply, throughout the proceedings, is his single exception, filed in this Court, limited to what he argumentatively characterizes as the "excessively harsh" recommendation of disbarment. From his unexplained and inexcusable conduct, we cannot but conclude that he has a fixed and irreversible habit of dilatoriness resulting in an indifferent neglect of the interests of his clients.

What was stated by the New York court in *In re Moller*, 248 App. Div. 877, 290 N.Y.S. 257 (1936), seems here to be particularly applicable to the posture in which we review the respondent's case. That court declared:

> "In May, 1935, respondent was censured for 'gross carelessness and reprehensible indifference' to his client's interests as well as to his own, before the Bar Association and this court. 244 App. Div. 819, 279 N.Y.S. 779. He is *again* before the court, having neglected and shown indifference in handling the affairs of clients. *He paid no attention to the request of the Bar Association to attend before it. He filed no answer to the petition presented to this court*, although he appeared on the return day. On the motion to confirm the referee's report he failed to appear or to file a brief. Respondent *evidently has lost interest in the practice of his profession.*" 290 N.Y.S. at 258. (emphasis added).

The respondent's utterly inexcusable and persistent neglect, manifested over a substantial period of time, when coupled with a consideration of the prior suspensions imposed upon him for the same or similar conduct, conclusively demonstrates that he lacks the required capacity to continue to practice law and establishes his unworthiness to hold himself out to the public as a practitioner in the profession. As we see it, the interests of the public mandate his disbarment; indeed, to order otherwise, would constitute an abnegation of our responsibilities, and would convey to the public, implicitly, a misrepresentation that the respondent continues to possess those basic attributes, required of all members of the bar, that they will act with proper care in representing their clients and will, with strictest fidelity, diligently attend their clients' interests. On the part of the respondent these attributes are convincingly found to be utterly wanting.

Accordingly, the respondent's exception is overruled, and the name of Harry Thomas Phoebus, Jr. will be stricken from the rolls of those authorized to practice law in this State.

*It is so ordered.*