483 A.2d 62

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Arold Henry RIPPERGER.**

**Misc. (Subtitle BV) No. 2, Sept. Term, 1984.**

Court of Appeals of Maryland.

Nov. 1, 1984.

Melvin Hirshman and Walter D. Murphy, Jr., Bar Counsel and Asst. Bar Counsel, Annapolis, for Atty. Grievance Com'n of Md.

Arold Henry Ripperger, Balitimore, pro se.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE and COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), specially assigned.

SMITH, Judge.

Acting pursuant to the provisions of Maryland Rule BV 9 on behalf of the Attorney Grievance Commission, Bar Counsel filed a petition with us seeking disciplinary action against Arold Henry Ripperger, a member of the Bar of this Court since October 7, 1941. He charged that Ripperger violated Disciplinary Rules 1–102(A)(1), (5), (6); 6–101(A)(1), (2), (3); 7–101(A)(1), (2), (3); and 9–102(B)(3), (4).[1]

---

1. These rules state in pertinent part:
   "DR 1–102 Misconduct.
   "(A) A lawyer shall not:
       (1) Violate a Disciplinary Rule.
       (2) ...
       (3) ...
       (4) ...
       (5) Engage in conduct that is prejudicial to the administration of justice.
       (6) Engage in any other conduct that adversely reflects on his fitness to practice law."
   "DR 6–101 Failing to Act Competently.
   "(A) A lawyer shall not:
       (1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
       (2) Handle a legal matter without preparation adequate in the circumstances.

## I

Pursuant to Rule BV9 b we referred the matter for hearing to a judge of the Eighth Judicial Circuit of Maryland. He filed with us comprehensive findings of fact. There is no real dispute as to the facts. It will serve no useful purpose to repeat them in detail. Suffice it to say that during the 1960's Ripperger began representing Mr. and Mrs. C. Wilson Knauff. In May 1982 their daughter hired Ripperger to represent her and her parents with respect to preparation of federal and state income tax returns for the calendar year 1981. Ripperger obtained an extension to June 15, 1982, for the filing of the returns but did not do so. His client prior to that extension of time handed him checks in amounts more than sufficient to cover the tax liability. He duly forwarded those checks to the respective agencies.

---

(3) Neglect a legal matter entrusted to him."
"DR 7–101 Representing a Client Zealously.
"(A) A lawyer shall not intentionally:
   (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
   (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.
   (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B)."
"DR 9–102 Preserving Identity of Funds and Property of a Client.
"(A) ...
"(B) A lawyer shall:
   (1) ...
   (2) ...
   (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
   (4) Promptly pay or deliver to the client as requested by a client, the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

Ripperger also was hired to send out ground rent notices. A ground rent ledger was delivered to him. The notices were not sent out. One of the factual findings of the trial judge was:

"From May of 1981 through April 22, 1983, Mrs. Knauff and her husband and family were unable to collect anything but a small portion of the ground rents which were due them on various properties because Respondent had the billing records for those ground rents and would not turn them over until April 22, 1983."

Ripperger was discharged. The ground rent ledger and other papers were not returned to the Knauffs until a court order requiring such return was obtained.

As to the nondelivery of the records, the trial judge said:

"In testimony before this Court, the only explanation offered by Respondent was that, from time to time while he had the documents in his possession, he would be unable to locate the documents and would thereafter become sidetracked. By way of explanation, Respondent testified:

'I realize that, sir, and as I stated, the office was in somewhat of a turmoil and I could not put my hands on the things. I also had some of the paper work at my home and I would start to look for it and then I would not find it, I would get sidetracked into something else and—There is no excuse for it. There is an explanation but no excuse for it. I thought I had indicated that before the inquiry panel.'

Respondent also testified, without being asked, that he has no problem with alcohol or drugs, that he is not nor was he mentally ill, nor did he have any other physical or mental impairment."

The trial judge concluded that Ripperger's conduct as to the tax returns violated DR 6–101(A)(3) and as to the ground rent ledgers violated DR 6–101(A)(3), DR 7–101(A)(2), and DR 9–102(B)(4).

## II

In his report to us the trial judge made reference to the fact that

"[o]ver objection by the Respondent, a Certification of Suspension from the Practice of Law for a period of three years imposed upon the Respondent on January 20, 1959 was admitted as Petitioner's Exhibit # 4 and made a part of the record."

Ripperger first excepts to the admission into evidence of the certificate of his suspension from the practice of law back in 1959. He makes the point that this was admitted *"before* [the trial judge] made any findings of fact or conclusions of law...." (Emphasis in original.) Thus he asserts that "the trial judge's findings and conclusions were impermissibly tainted by the improperly admitted evidence of Respondent's prior suspension and hence should not be permitted to stand."

It is true that Ripperger objected to the introduction into evidence before Judge Davis of a certificate pertaining to his prior suspension. However, this information was already in evidence. At the outset Bar Counsel said he had "three extracts to offer at this time." He stated after offering the first:

"The second thing is an extract from the interrogatories of Bar Counsel to Mr. Ripperger and the responses thereto filed by Mr. Ripperger. I'd like to get that marked as Exhibit Number 2 for the Petitioner and offer that into the record. That would be an extract of questions and answers, Numbers 1 through 4 and then 6 through 11 and then Numbers 19, 25, 26 and 27."

In response to Ripperger's argument against admission of this certificate Bar Counsel pointed out:

"He's already answered in his interrogatory which is in evidence, Interrogatory Number 9, that he did have a prior sanction, and this is simply more documentary evidence as to that prior sanction."

He had, indeed, in the answer to that interrogatory admitted his prior suspension. Since this was already in evidence, there was no prejudicial error in admitting this certificate. For the converse see *S & S Bldg. Corp. v. Fidelity Storage,* 270 Md. 184, 190, 310 A.2d 778, 782 (1973), and *Spriggs v. Levitt & Sons, Inc.,* 267 Md. 679, 683, 298 A.2d 442, 444 (1973), where we held that even if evidence were inadmissible any objection to its admissibility was waived by its subsequent admission without objection. Hence, we overrule this objection.

### III

It is asserted that the trial judge "erred in finding (apparently as a fact) that Respondent violated DR 6–101(A)(3) by 'failure to timely file the 1981 federal and State Income Tax Returns' . . . ." It is claimed that this "was not supported by the record. . . ." Ripperger refers to the fact that the trial judge said at one point that Ripperger "was conceivably discharged before the new filing deadline, i.e., June 15, 1982, had passed." It is asserted:

> "That respondent retained the tax records does not at all, on the state of the record as presented to the trial judge, establish, or necessarily lead to the conclusion that, Respondent was still engaged by the Knauffs up to June 15, 1982. The record at least intimates that he may not have been. The trial judge recognized this when he commented that 'Respondent was conceivably discharged before the new filing deadline, i.e., June 15, 1982, had passed' (Memorandum, page 7) and by pointing out that '(i) in testimony before this Court, it was elicited that the Respondent was discharged by the Knauffs in June of 1982' (*Id.*). The critical question is the date of Respondent's discharge and the sort of proof alluded to in the trial judge's Memorandum certainly is not the clear and convincing evidence required in a disciplinary proceeding to establish a violation of a disciplinary rule. In the absence of such proof that Respondent was not discharged prior to June 15, 1982, the record patently does

not support the trial judge's finding that Respondent violated DR 6–101(A)(3) by not filing returns by that date."

At four separate places in the record Ripperger testified that he was discharged in July 1982. Hence, we overrule this exception.

## IV

There apparently has been no financial loss in this case at any time. Moreover, the trial judge reported:

"In testimony before this Court, it was elicited that Nancy Knauff had met with the Respondent at the funeral of her father and had subsequently discovered that the Respondent was named as the personal representative for her father's estate. After conferring with her mother, who was at the time very ill, the mother had instructed Nancy Knauff that she did not wish to go through the aggravation of trying to retain other counsel and that if Nancy Knauff was satisfied that the Respondent would administer the estate of C. Wilson Knauff expeditiously, in contrast to the manner that he had dealt with the filing of the 1981 tax return, the final decision as to whether the Respondent should administer the estate was left to Nancy Knauff. She ultimately decided to allow the Respondent to administer the estate. She also allowed the Respondent to conclude the audit of the trust estate of her father which had to be closed out by reason of his death."

Bar Counsel points out that not only was Respondent suspended from the practice of law for three years subsequent to his conviction in 1956 for failing to file his federal income tax return, but he had two other transgressions. As Bar Counsel puts it:

"[O]n June 16, 1970, the Committee on Grievances of the Bar Association of Baltimore City issued an 'unofficial' reprimand (as compared to an official reprimand which, at the time, was a reprimand issued by the Executive Coun-

cil of the Bar Association of Baltimore City or by a court of competent jurisdiction).[2] This was for extreme carelessness, mishandling and bad judgment as well as possible conflict of interest.

"Finally, on December 2, 1980, the Respondent received a private reprimand issued by the Review Board of the Attorney Grievance Commission for neglecting a legal matter entrusted to him in that he did not properly handle the administration of an estate, failed to timely file the first administration account, failed to file such an account after receiving notice of delinquency, failed to file a timely Federal Estate Tax Return, and failed to communicate with the co-personal representative. That misconduct occurred during 1977 and 1978."

Bar Counsel suggests a suspension for one year. Ripperger states, "While his record admittedly is not pristine, the facts of this case, even taken together with his prior suspension, do not demand any sanction more severe than the reprimand recommended by the Inquiry Panel."

In *Maryland St. Bar Ass'n v. Phoebus*, 276 Md. 353, 347 A.2d 556 (1975), Judge O'Donnell said for the Court:

"Where an attorney has been shown to have been negligent, or inattentive to his client's interests, or to have exhibited a lack of professional competency in the handling of a client's affairs, in violation of the canons or of a statute, the imposition of some disciplinary sanction against him may be warranted; the extent of the discipline to be applied, however, is generally dependent upon the severity of the conduct and the particular facts and circumstances surrounding it. In determining the degree of discipline to be imposed for such conduct, it has been held proper not only to consider such circumstances as might mitigate or extenuate the offense, but also proper to consider the attorney's prior history of misconduct and

---

2. This was prior to the creation of the Attorney Grievance Commission.

any antecedent sanctions which may have been imposed." 276 Md. at 362, 347 A.2d at 561 (citations omitted).

In imposing the sanction in this case we take into consideration Ripperger's admittedly less than "pristine" record. We also take into consideration that his clients suffered aggravation but no financial loss and have sufficient confidence in him to let him continue to handle the estate of Mr. Knauff. Accordingly, we conclude that the proper sanction under the circumstances is a suspension for a period of three months. Ripperger's suspension shall commence thirty days from the date of the filing of the opinion in this case. He shall stand suspended beyond that date unless and until all costs incurred in connection with this proceeding are paid in full.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15 c, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST AROLD HENRY RIPPERGER.