# ATTORNEY GRIEVANCE COMMISSION OF MARYLAND v. JAMES HENRY MONTGOMERY, JR.

[Misc. (BV) No. 12, September Term, 1982.]

*Decided May 31, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Kendall R. Calhoun, Assistant Bar Counsel,* with whom was *Melvin Hirshman, Bar Counsel,* on the petition, for petitioner.

*Lalit Harilal Gadhia* for respondent.

COUCH, J., delivered the opinion of the Court. MURPHY, C. J., dissents in part and concurs in part and filed a dissenting and concurring opinion at page 121 *infra.*

The Attorney Grievance Commission (Commission), acting through Bar Counsel, filed a petition with us seeking disciplinary action against James Henry Montgomery, Jr., a member of the Maryland bar since 1975. The petition alleged five instances of professional misconduct in the main involving neglect. We referred the matter for hearing, pursuant to Rule BV 9, to a judge (now retired) of the Circuit Court for Baltimore City. Following the hearing, the judge made findings of facts and conclusions of law in each of the five cases. No exceptions were taken by either party. Bar Counsel has recommended a public reprimand. At oral argument before us, counsel for Respondent sought a private reprimand or a "warning." In justification for his recommendation of a public reprimand, Bar Counsel argues that such sanction is appropriate because:

(1) the cases basically involved lack of communication;

(2) there was no evidence of serious prejudice to any client;

(3) there was no prior record of violations by Respondent; and

(4) the acknowledgment by Respondent of his shortcomings and his promise not to repeat them.

The Respondent has contended through oral argument that it was his newness to the bar and his poor economic condition, preventing him from maintaining a stable law office, which led to his failure to keep in touch with his clients.

From our review of the record, we are not persuaded that a reprimand, public or private, is the appropriate sanction and shall order the Respondent suspended from the practice of law for sixty days. We explain.

## (1)

### Complaint of Antonio G. Rodriguez

Because of some unclear problem Dr. Rodriguez was having with his employer, Morgan State University, he retained the Respondent to represent him in October, 1980. A retainer fee, plus costs, was given to Respondent. There was evidence, and the hearing judge so found, that calls and correspondence to the Respondent went unanswered, although one of the letters from Dr. Rodriguez was misdirected. After talking to another attorney, Dr. Rodriguez wrote to the Respondent in March, 1981, terminating his relationship and demanding a return of the retainer fee. Despite receiving from the Attorney Grievance Commission a copy of Rodriguez's complaint and discharge letter, Respondent nevertheless filed suit on behalf of Dr. Rodriguez in October, 1981. Dr. Rodriguez, through another attorney, settled his claim against the University in January, 1982. The hearing judge concluded that the Respondent violated Disciplinary Rules 1-102 (A) (1), 2-110 (B) (4), and 6-101 (A) (3).[1] While the Commission, in its petition, had alleged violation of two additional Rules, it has taken no exception to the failure of the hearing judge to make any finding with respect thereto, thus we need not address them as we find no evidence to support the allegations.

---

1. DR 1-102 Misconduct.

In our view, the record is clear and convincing that the Respondent did violate the Rules, as so found by the trial judge.

### (2)

### Complaint of Louis and Mary Behrendt

In August, 1977, the Behrendts engaged Respondent to pursue a claim they considered they had against a realty company regarding its alleged inaction in selling their home. The Behrendts were building a new home which, subsequently, was completed in 1979. The basis of this complaint was the inability of the Behrendts to get in touch with Respondent for long periods of time. Initially, from September, 1977, to July, 1978, there was no contact. In July, 1978, Respondent did forward a petition (apparently a declaration) to the Behrendts, which they signed and returned to him in September, 1978. The Behrendts testified they had no contact with Respondent thereafter for two years although they tried to call him. It appears that a suit was filed in April, 1980, but the Behrendts did not know of this until they themselves contacted the Circuit Court for Baltimore County. Still not hearing from Respondent, the Behrendts engaged new counsel in November, 1980.

---

"(A) A lawyer shall not:
    (1) Violate a Disciplinary Rule."

DR 2-110 Withdrawal from Employment.

"(B) Mandatory withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

\* \* \*

(4) He is discharged by his client."

DR 6-101 Failing to Act Competently.

"(A) A lawyer shall not:

\* \* \*

(3) Neglect a legal matter entrusted to him."

The hearing judge, having found substantially the above facts, concluded that Respondent violated Disciplinary Rules 1-102 (A) (1) and 6-101 (A) (3) which specifically concern the neglect of a legal matter entrusted to a lawyer. Again, while the Commission charged Respondent with other Rule violations, it has taken no exception to the failure of the hearing judge to consider such violations. We do not address them either, finding no clear and convincing evidence in support thereof. We have reviewed the record and, again, agree with the trial judge.

(3)

Complaint of Abrom Hunter Benton

Respondent was engaged by Mr. Benton in July, 1980, to represent him in an alleged claim he had against his insurance company for damage to his house in a wind and hail storm. While the fee arrangement is not entirely clear, it is certain that Respondent was paid a $500.00 retainer. Mr. Benton was unable to make contact with Respondent and in June, 1981, filed a complaint with the Commission. Respondent did file a suit on Mr. Benton's behalf in December, 1981, but apparently failed to so notify Mr. Benton. In July, 1982, Mr. Benton learned of the suit when Respondent visited him and had him execute an apparent proof of loss. Mr. Benton testified that he hoped Respondent was still pursuing the matter and that he was "somewhat satisfied" with Respondent's services.

The hearing judge, after substantially making findings of fact consistent with the above, concluded that Respondent had violated DR 1-102 (A) (1) and 6-101 (A) (3) (neglect). Again, no exceptions were taken by either party.

Upon our review of the record, we agree with the hearing judge.

## (4)

### Complaint of Zola Boone

Having received a termination notice from her employer, Morgan State University, Dr. Boone engaged Respondent to represent her in October, 1980. At this time, Respondent was already representing her in another matter, which was successfully concluded in March, 1981. As to the matter involved in the instant complaint, Respondent knew an injunction action would have to be filed before the end of the year, but he failed to file and Dr. Boone was terminated. Not being able to make contact with the Respondent, Dr. Boone, by letter, discharged him September 30, 1981; the same day, unaware of his discharge, Respondent filed suit on her behalf. She was unaware of the suit until November, 1981, when she got a letter from the Attorney General's office, which was defending the action, seeking Respondent's address so that contact could be made with him about her case. Finally, it appears that Respondent accepted a $1,600.00 loan from Dr. Boone, unsecured and to be repaid in ten days; the loan remains unpaid. It is unclear to this Court why the hearing judge made no findings of fact regarding the unpaid loan. However, no exceptions were taken by either party.

The hearing judge concluded Respondent had violated DR 1-102 (A) (1) and 2-110 (B) (4) (failure to withdraw after discharge). Again, no exceptions were taken by either party.

In our view, the record supports a conclusion that Respondent violated DR 6-101 (A) (3) (neglect) as well as those found by the hearing judge. Certainly Respondent neglected the injunction matter and it is clear Respondent did not withdraw after receiving Dr. Boone's letter of dismissal.

(5)

Complaint of Gerald McCants

This complaint also involves a matter concerning the termination of the employment of an associate professor at Morgan State University. In March, 1978, Dr. McCants engaged the Respondent, who initially contacted the University and subsequently filed a declaratory judgment action in the Circuit Court for Baltimore City. This action was dismissed in January, 1979, on the defendant's motion. While there was some communication between Dr. McCants and the Respondent over progress of his complaint, a new action for breach of contract was not filed until March, 1981. In July, 1981, Respondent advised Dr. McCants that a defense of sovereign immunity had been made. Thereafter, Dr. McCants was unable to locate Respondent. In December, 1981, this later action was dismissed on the defendant's motion following a hearing attended by Dr. McCants but not by Respondent.

The hearing judge, based on the above, found Respondent to have violated DR 1-102 (A) (1) and DR 6-101 (A) (3) (neglect). Again, no exceptions were taken by either party. It seems to us that the record amply supports the conclusion reached by the trial judge. Just why the March, 1981, breach of contract action was dismissed we are unable to discern from the record. In any event, it is clear that Respondent was not present in court when the dismissal took place and this alone would constitute neglect.

Proceeding to the matter of sanction, we disagree with the Commission's recommendation of a public reprimand. It appears to us that while all of the complaints seem to have a common thread running through them (lack of communication), there are more serious problems in the cases. In times past, we have stated that the purpose of a disciplinary proceeding is to protect the public rather than to punish an erring attorney. *See Attorney Griev. Comm'n v. Kahn,* 290 Md. 654, 682, 431 A.2d 1336, 1351 (1981); *Attorney Griev. Comm'n v. Lockhart,* 285 Md. 586, 596-97, 403 A.2d

1241, 1247 (1979); *Attorney Griev. Comm'n v. Stewart,* 285 Md. 251, 258, 401 A.2d 1026, 1029 (1979), *cert. denied,* 444 U.S. 845, 100 S.Ct. 89, 62 L.Ed.2d 58 (1979), *reh'g denied,* 444 U.S. 975, 100 S.Ct. 472, 62 L.Ed.2d 391 (1979). Thus we recognize that we have a responsibility to the public. In fulfilling this responsibility, we believe we would be remiss in adopting the recommendation of reprimand. In our view, lack of communication with one's client, for whatever reason, is a matter of continuing concern to the public. Moreover, this Court has consistently regarded neglect and inattentiveness to a client's interests to be a violation of the Canons of Ethics warranting the imposition of some disciplinary sanction. *See, e.g., Attorney Griev. Comm'n v. Finnesey,* 283 Md. 541, 547, 391 A.2d 434, 436-37 (1978); *Attorney Griev. Comm'n v. Pollack,* 279 Md. 225, 237, 369 A.2d 61, 68 (1977); *Bar Ass'n of Balto. City v. Dearing,* 274 Md. 66, 332 A.2d 649 (1975). Respondent's failure to communicate with his clients, coupled with the obvious failure to withdraw in the Boone and Rodriguez cases and the neglect involved in the McCants, Behrendt, and Rodriguez cases, persuades us that a suspension is more appropriate than a reprimand.

It is well settled that "[t]he severity of the sanction to be imposed is dependent on the facts and circumstances of each case [,]" and that facts of mitigation may be taken into consideration. *Pollack, supra,* 279 Md. at 238, 369 A.2d at 68. There was no indication of deceit, fraud or dishonesty on the part of Respondent. Nor did he profit or unjustly enrich himself by his conduct. During the course of the proceedings, Respondent addressed the court wherein he acknowledged that a lawyer must maintain communication with his client and that a lawyer should also maintain himself "in a position where clients can reach him." Respondent also stated that he had taken steps to improve in both these areas. As an explanation for his problems, he explained:

> "These difficulties, that is the resource difficulties, the economic kind of difficulties that come from maybe an extended kind of pro bono activity,

are real difficulties. I find unfortunate that it was necessary to move and have my office moved, but the economic circumstances dictated that. The economic circumstances dictated a number of circumstances that made it very difficult for me, as an individual and in terms of my, in terms of all relationships."

Although from Respondent's explanation it is obvious that his troubles to a large extent emanated from poor economic conditions, we conclude that a 60 day suspension, nevertheless, is an appropriate sanction.

Accordingly, James Henry Montgomery, Jr., shall stand suspended from the practice of law in this State for the period of sixty days, beginning thirty days after the filing of this opinion. He shall stand suspended beyond that date unless and until all costs incurred in connection with this proceeding are paid in full.

> *It is so ordered; respondent shall pay all costs, including all costs of transcripts, pursuant to Maryland Rule BV 15c, for which sum judgment is entered in favor of the Attorney Grievance Commission against James Henry Montgomery, Jr.*

*Murphy, C.J., dissenting in part and concurring in part:*

I concur with the Court's conclusion that the Respondent has violated the designated provisions of the Code of Professional Responsibility. I think, however, that the appropriate sanction for what I view as extremely serious gross neglect of client affairs should be six months' suspension from the practice of law. In my judgment, the sixty-day suspension sanction imposed by the Court in this case will be viewed

122

both by the public and the profession as far too light in view of the Respondent's egregious misconduct. *Compare Maryland St. Bar Ass'n v. Phoebus,* 276 Md. 353, 347 A.2d 556 (1975).