567 A.2d 112

ATTORNEY GRIEVANCE COMMISSION

v.

James Henry MONTGOMERY, Jr.

Misc. Docket (Subtitle BV) Nos. 16, 32, Sept. Term, 1986.

Court of Appeals of Maryland.

Dec. 26, 1989.

Melvin Hirshman, Bar Counsel and Kendall R. Calhoun, Asst. Bar Counsel for the Atty. Grievance Com'n of Maryland, for petitioner.

James Henry Montgomery, Jr., Baltimore, pro se.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and CHARLES E. ORTH, Jr. (Judge, Retired, Specially Assigned).

MURPHY, Chief Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed two petitions for disciplinary action against James Henry Montgomery, Jr., alleging violations of the disciplinary rules of the Code of Professional Responsibility. We referred both matters, pursuant to Maryland Rule BV9 b, to Judge Elsbeth Levy Bothe of the Circuit Court for Baltimore City to make findings of fact and conclusions of law. After conducting a hearing, Judge Bothe filed detailed findings and conclusions as follows:

### *"Complaint of Annette Henderson*

"On or about November 9, 1985, Annette Henderson retained Respondent to handle her divorce case. Respondent requested and received a retainer fee of $150. Respondent failed to take any action, communicate with the Complainant or return her numerous calls until early January, 1986.

"In early January, 1986 Respondent called Mrs. Henderson at her work place and made arrangements to meet with her on or about January 21, 1986 to have her sign certain papers. Respondent failed to keep that appointment of January 21, 1986 with Mrs. Henderson. Respondent failed to advise Mrs. Henderson that he would be unable to keep the appointment of January 21, 1986.

"Respondent failed to communicate further with Mrs. Henderson, despite her numerous phone calls, until April, 1986.

"On or about April 6, 1986, Mrs. Henderson called Respondent at his home and requested that he return to her the retainer fee of $150. Respondent agreed to return the retainer, but failed to do so.

On or about May 7, 1986, Mrs. Henderson wrote to Respondent again requesting that Respondent return the retainer fee. Respondent received that letter but failed to respond. On or about June 20, 1986 Mrs. Henderson wrote to Respondent discharging him and requesting an accounting and reimbursement of the fee paid to him. Respondent received that letter but failed to respond.

"Respondent has failed to take any action on behalf of Mrs. Henderson with regard to her divorce, has failed to return the retainer fee of $150 and has failed to provide an accounting to Mrs. Henderson as she requested.

### *"Complaint of Barbara Edwards*

"On March 21, 1984, Barbara Edwards consulted the Respondent regarding her discharge as an employee by Provident Hospital on March 19, 1984. As a result of that meeting, the Respondent undertook to represent Ms. Edwards with regard to a possible wrongful discharge action against Provident Hospital. No fee arrangements was made at that time since the Respondent indicated to Ms. Edwards that they would discuss the fee at a later date.

"Over the next six to eight weeks Ms. Edwards met with the Respondent six to eight times regarding this matter. In addition to the wrongful discharge action, the Respondent agreed to obtain the necessary forms from Ms. Edwards' union for filing a Workmen's Compensation claim on her behalf.

"Beginning in June 1984, Ms. Edwards was unable to contact the Respondent despite repeated efforts.

"In July, 1984, Ms. Edwards learned of a new address and phone number for the Respondent through his former office. Ms. Edwards was able to contact the Respondent who advised her that he had prepared the papers for her Workmen's Compensation claim and would leave them with the receptionist for her to sign. The Respondent never left the papers with the receptionist for Ms. Edwards to sign. The Respondent advised Ms. Edwards that he was having problems and would get back to her in the near future. Respondent never contacted Ms. Edwards and never contacted the union representative to obtain the necessary papers for filing the Workmen's Compensation claim.

"Ms. Edwards continued to call the Respondent's office and was eventually informed that the Respondent's whereabouts were unknown. Ms. Edwards sought the services of a new attorney in December 1984 who determined that no Workmen's Compensation claim had been filed on her behalf.

"Ms. Edwards made a complaint with the Attorney Grievance Commission in February 1985.

"On July 18, 1985 the Respondent wrote to the Attorney Grievance Commission advising that he had sent a letter on Ms. Edwards' behalf to Provident Hospital and enclosed a purported copy of that letter. Respondent never sent the original of that letter to Provident Hospital.

"In his July 18, 1985 letter to the Attorney Grievance Commission, Respondent also advised that he had sent Ms. Edwards a letter on April 2, 1984 advising her of the fee arrangement and the necessary retainer and enclosed a purported copy of that letter. The respondent and Ms. Edwards never discussed the fee arrangement as indicated in the April 2, 1984 letter to Ms. Edwards. Respondent never sent the original of the April 2, 1984 letter to Ms. Edwards.

"Ms. Edwards, through her new attorney, requested the return of her papers from the Respondent but the Respondent has failed to return any papers to her.

*"Complaint of Carlos and Dotcenia Phears*

"In the fall of 1983, Carlos Phears discussed with the Respondent a situation with Maryland National Bank regarding an alleged loan check that Mr. Phears had deposited in a Maryland National account which check was subsequently dishonored and for which Maryland National Bank was seeking restitution from Mr. Phears. The Respondent undertook to represent Mr. Phears with regard to the situation with Maryland National. No fee arrangement was discussed at that time.

"In March 1984, Maryland National Bank filed suit against Mr. Phears. The Respondent accepted service on Mr. Phears' behalf and thereafter filed various pleadings in the matter. The trial was held on February 19, 1985. The Respondent was unprepared at that time and sought a continuance which was denied. The Court entered a judgment in favor of Maryland National Bank against Mr. Phears on February 19, 1985.

"Following the trial, Respondent advised Mr. and Mrs. Phears that he would file a Motion for a New Trial and, if that was unsuccessful, he would take an appeal. Respondent filed a Motion for a New Trial which was denied on April 17, 1985.

"Mr. Phears has been unable to contact the Respondent regarding this matter since the trial on February 19, 1985 despite repeated efforts.

"Respondent failed to note a timely appeal on behalf of Mrs. Phears following the denial of the Motion for a New Trial.

"Mr. Phears' wages were garnished by Maryland National Bank in or around June 1985.

"The Respondent filed suit on September 24, 1984 on behalf of Mr. and Mrs. Phears in the Circuit Court for Baltimore City against the individuals and entities involved in the alleged fraudulent loan. An answer to that suit was filed on October 26, 1984. Respondent has failed to take any further action on behalf of the Phears in that lawsuit.

The Phears have been unable to contact the Respondent regarding the status of that suit.

"In the late summer or early fall of 1983, the Respondent also undertook to represent the Phears regarding another matter wherein their car had been towed after an accident and subsequently disposed of by the towing company without notice to them. The Respondent advised the Phears that he had sent a letter to the towing company on their behalf and would initiate action against the towing company regarding the disposition of their car. The Respondent failed to take any action on behalf of the Phears' as promised. The Phears have been unable to contact the Respondent to determine the status of that matter despite repeated efforts.

"On June 18, 1985 the Phears wrote a letter to the Respondent advising him to withdraw from all of their matter and requesting the return of their papers and documents. The Respondent has failed to withdraw from the suit in the Circuit Court for Baltimore City and has failed to return any papers or documents to the Phears.

## "CONCLUSIONS OF LAW

"The Court concludes, upon the facts found herein, that the Respondent, by his acts and omissions, did violate the following Disciplinary Rules of the Code of Professional Responsibility then in effect:

'DR 1-102 Misconduct

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

DR 2-110  Withdrawal from Employment

(B) Mandatory Withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

(4) He is discharged by his client.

DR 6–101   Failing to Act Competently

(A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle.

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him.

DR 7–101   Representing a Client Zealously

(A) A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonable available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which did not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B).

DR 9–102   Preserving Identity of Funds and Property of a Client

(B) A lawyer shall:

(4) Promptly pay or deliver to the client as requested by a client the funds, securities or other properties in the

possession of the lawyer which the client is entitled to receive.' "

Bar Counsel took no exceptions to Judge Bothe's findings. He avers that disbarment is the appropriate sanction in the circumstances of this case, and he draws attention to prior acts of misconduct on Montgomery's part for which we imposed a sixty-day suspension. *Attorney Griev. Comm'n v. Montgomery*, 296 Md. 113, 460 A.2d 597 (1983).

Montgomery took exception "to each and every finding and recommendation" of Judge Bothe. He contends that the procedure followed in the case violated due process of law for failure to provide notification to him of the hearings or to adduce legally sufficient evidence to support Judge Bothe's findings. Moreover, he contends that Judge Bothe was biased against him, that his right of privacy was abused by the Commission, that the Commission's conduct was improper, and that he was not provided with a copy "of the findings or decisions, or notified of the hearings held in this matter."

The disciplinary petitions were filed, respectively, on July 29 and December 18, 1986, together with interrogatories, requests for admissions and of the genuineness of documents; they were directed to Montgomery at his office address, 1404 Madison Avenue in Baltimore City.[1] Despite repeated efforts to serve Montgomery at this address, both by the sheriff and by private process servers, service was not made until January 25, 1989 when Montgomery was located at 437 East 27th Street. Montgomery did not respond to the petitions, did not appear before the Inquiry Panel, and an order of default was entered by the court on April 24, 1989, a copy of which was sent to his office. That notice was returned "not at this address."

Judge Bothe held a hearing on June 5, 1989, at which time she considered that Bar Counsel's requests for admis-

---

1. The records of the Clients' Security Trust Fund continue to show this address as Montgomery's law office. *See* Maryland Lawyers' Manual (1988).

sions of facts and genuineness of documents were admitted in view of Montgomery's failure to answer, or to appear either before the Inquiry Panel or the court.

The record discloses that on June 12, 1989, Montgomery appeared as counsel in a criminal case then pending before Judge Bothe. At that time, in response to Judge Bothe's inquiry, he denied any knowledge of the pending disciplinary charges against him and said that he had never been served with process or notified of the disciplinary hearing. He acknowledged at that time that 1404 Madison Avenue was his correct address.

Montgomery thereafter filed an objection to, and moved to set aside, the default judgment by pleadings found under the door of Judge Bothe's chambers. Judge Bothe set a hearing on Montgomery's objections for July 11, 1989, and a letter notifying Montgomery of this date was mailed to his Madison Avenue address on June 23, 1989. In addition, the sheriff was directed by the court to personally serve a copy of the notice letter upon Montgomery at the Madison Avenue address; repeated efforts by the sheriff to serve Montgomery at this address were unsuccessful. The sheriff noted that the Madison Avenue address was a row house, and Montgomery's name was on the mailbox as occupying the third floor.

Montgomery did not appear at the July 11 hearing, and his claim of defective service was denied on August 2, 1989. The next day, Montgomery moved to set aside Judge Bothe's order, claiming that he had never been notified of the July 11 hearing. His pleading used his Madison Avenue address. Judge Bothe declined to strike her order. She concluded that Montgomery falsely represented that his office and/or residence was located at 1404 Madison Avenue, that he lied in denying that he had been served with the disciplinary petitions and in stating that he was unaware of the disciplinary proceeding against him until June 12, 1989. Judge Bothe found as a fact that Montgomery had been served on January 25, 1989.

Bar Counsel points out that Montgomery's conduct, as charged in the petitions, involves multiple acts of neglect, misrepresentation, unavailability to and failure to communicate with clients, and failure to withdraw from cases after being discharged. Bar Counsel notes that Montgomery's previous disciplinary infractions similarly "revolved around ... [his] failure to maintain a constant and viable office that would afford his clients opportunity to communicate with him as well as his failure to communicate with them and the neglect of their matters." Bar Counsel maintains that Judge Bothe's findings showed that Montgomery again failed to maintain a situs that would allow his clients access to and communication with him, resulting in prejudice to the clients.

Montgomery appeared at oral argument before us. He again disavowed having been served with the petitions or that he had any knowledge of them prior to June 12, 1989. He said that he was present, at least some of the time, at the Madison Avenue address; that this was his office and mailing address since 1985; and that he occasionally lived there as well. He said that he had no other office for the practice of law in Maryland. He stated that he also lived at 5705 Alameda in Baltimore City; that he owned property in and resided in Pennsylvania with his wife and family; and that he devoted considerable time to his religious ministry in Pennsylvania. Asked whether he was admitted to the Pennsylvania Bar, he demonstrated uncertainty, finally answering that he had taken the bar exam in 1988, passed, but had not yet been admitted. So vague and indefinite was Montgomery about details of his office and living arrangements that the Court readily accepts Judge Bothe's factual conclusion that he falsely represented that he had not been served with the disciplinary petitions.

The earlier disciplinary action against Montgomery involved five instances of professional misconduct, primarily neglect and failure to communicate with his clients between

1977 and 1981. Before us, Montgomery attributed his misconduct during those years to his "newness to the bar and his poor economic condition, preventing him from maintaining a stable law office, which led to his failure to keep in touch with his clients." *Attorney Griev. Comm'n v. Montgomery, supra,* 296 Md. at 115, 460 A.2d 597. He readily acknowledged that a lawyer must maintain communication with his client and maintain himself "in a position where clients can reach him." *Id.* at 120, 460 A.2d 597. He told us that he "had taken steps to improve in both these areas." *Id.* We noted that neglect and inattentiveness to a client's interests warrant the imposition of a disciplinary sanction. *Id.* at 120, 460 A.2d 597, and cases there cited. Notwithstanding Montgomery's plea that "his troubles to a large extent emanated from poor economic conditions," *id.* at 121, 460 A.2d 597, we determined that his misconduct was sufficiently grave, as earlier indicated, to warrant a sixty-day suspension.

Montgomery's misconduct in the present case occurred between 1983 and 1985. It is markedly similar to that involved in the earlier case. On the record before us, the findings of which we accept, we share Bar Counsel's view that Montgomery has continued to neglect his clients' affairs and to be inaccessible to them after the client-attorney relationship has been established.

In *Maryland St. Bar Ass'n v. Phoebus,* 276 Md. 353, 347 A.2d 556 (1975), we disbarred a lawyer for persistent neglect of client affairs. We there observed:

"Because of the vital role an attorney, licensed to practice, plays in the legal process, he must act with competence and proper care in representing his clients. His admission to the Bar attests to the public that he has met the standards for admission and is competent to discharge his duties toward his clients with strictest fidelity. Once retained he must carefully safeguard the interests of his client, must be diligent in his representation of the client's interest, must give appropriate attention to

his legal work, and must observe the utmost good faith in his professional relationship."

We said in *Phoebus* that where an attorney has been shown to have neglected client affairs or to have been inattentive to his clients' interests, the extent of the discipline to be applied is generally dependent upon the severity of the misconduct and the particular facts and circumstances surrounding it. *Id.* at 362, 347 A.2d 556. We explained that in determining the degree of discipline to be imposed, "it has been held proper not only to consider such circumstances as might mitigate or extenuate the offense, but also proper to consider the attorney's prior history of misconduct and any antecedent sanctions which may have been imposed." *Id.*

It is readily apparent to us that Montgomery's misconduct was committed with an awareness that neglect and failure to communicate with clients constitute proscribed professional conduct. Equally apparent is that the prior disciplinary sanction did not succeed in imparting to him an appreciation of the seriousness of the duties an attorney owes to clients. Thus applicable to the present case are the words of *Phoebus*, 276 Md. at 365, 347 A.2d 556, that the earlier sanction imposed upon the erring lawyer was obviously "ineffective in undertaking to cure the evil of his prior proven neglect, and failed to persuade him to reform his ways and to conform his conduct to the standards demanded of the profession."

We think Montgomery's misconduct, manifested over a substantial period of time, and coupled with the disciplinary infractions which resulted in the previous suspension for the same type of misconduct, demonstrates that he lacks the required capacity to continue to practice law and establishes his unworthiness to hold himself out to the public as a practitioner in the profession. As in *Phoebus*, "the interests of the public mandate ... disbarment; indeed, to order otherwise, would constitute an abnegation of our responsibilities, and would convey to the public, implicitly, a misrepresentation that the respondent continues to possess those

basic attributes, required of all members of the bar, that they will act with proper care in representing their clients and will, with strictest fidelity, diligently attend their clients' interests." *Id.* at 366, 347 A.2d 556.

In concluding that disbarment is the appropriate sanction in the circumstances of this case, we have considered, but find no substance in any of Montgomery's exceptions. For other cases involving disbarment for neglect of client affairs, *see, e.g., Atty. Griev. Comm'n v. Howard,* 299 Md. 731, 475 A.2d 466 (1984) and *Atty. Grievance Comm'n v. Pollack,* 279 Md. 225, 369 A.2d 61 (1977).

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JAMES HENRY MONTGOMERY, JR.