913 A.2d 1

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

William Henry MANGER.

Misc. Docket AG No. 50, Sept. Term, 2005.

Court of Appeals of Maryland.

Dec. 14, 2006.

Dolores O. Ridgell, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n, John C. Broderick, Asst. Bar Counsel), for petitioner.

Richard P. Cox, Annapolis, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary Action against William Henry Manger, the respondent. The petition charged that the respondent violated Rules 1.1, 1.3, Diligence,[2] Competence,[3] 1.4, Communication,[4] 1.5,

---

1. Maryland Rule 16–751, as relevant, provides:

 "(a) Commencement of disciplinary or remedial action.
 (1) *Upon approval of the Commission.* Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Pursuant to that Rule "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

3. Rule 1.1 provides:

 "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

4. Rule 1.4 provides:

 "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

Fees,[5] 3.1, Meritorious Claims and Contentions,[6] and 8.4, Misconduct,[7] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812.

We referred the case, pursuant to Rules 16–752(a),[8] to the Honorable Paul A. Hackner, of the Circuit Court for Anne

---

"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

5. Rule 1.5 provides, as relevant:
"(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
"(3) the fee customarily charged in the locality for similar legal services;
"(4) the amount involved and the results obtained;
"(5) the time limitations imposed by the client or by the circumstances;
"(6) the nature and length of the professional relationship with the client;
"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
"(8) whether the fee is fixed or contingent."

6. Rule 3.1 provides:
"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established."

7. Rule 8.4, as relevant, provides:
"It is professional misconduct for a lawyer to:
"(d) engage in conduct that is prejudicial to the administration of justice."

8. Rule 16–752(a) provides:
"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter

Arundel County, for hearing pursuant to Rule 16–757(c).[9] At the hearing, the petitioner and the respondent stipulated to the following facts and that they "are established by clear and convincing evidence:"

"1. Respondent, William Henry Manger, is 75 years old. He holds a B.A. degree from Loyola College in Baltimore (1953) and the LL.B. Degree from Georgetown University (1958). He was admitted to the Maryland Bar on October 24, 1958 and subsequently became a member of the bars of the District of Columbia and California. Respondent is now and at all times relevant to this proceeding was in the active practice of law in Maryland. He is no longer a member of the D.C. or California bars.

"2. Respondent has been an attorney for 48 years. His legal practice has concentrated primarily on securities, corporate, franchise and insurance law and related litigation. Respondent has had very little civil trial experience in Maryland courts and virtually no experience litigating family law/custody matters in any jurisdiction where he is or was admitted to practice.

"3. Alba Elena Miller, f/k/a Alba Elena Rodriquez (the 'Complainant') met with Respondent on or about May 4, 2002 to consult with him about custody issues arising between her and her ex-husband. Complainant had been denied legal joint custody of her two children and only limited visitation largely due to a diagnosis that she suffered from bipolar disorder with paranoid tendencies. After the

---

a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

9. Maryland Rule 16–757(c) provides:

"(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

initial consultation Respondent, by letter dated May 6, 2002, confirmed the May 4th meeting and proposed the terms upon which he would represent her which included, *inter alia*, the waiver of fees for the initial meeting on May 4th; an hourly rate of $ 150 per hour; reimbursement of all out of pocket expenses; and a request for an initial retainer of $1,000. Respondent also stated in this letter that he would provide detailed monthly billing statements. Petitioner's exhibit 1, tab 2.

"4. By letter dated November 4, 2002, Respondent acknowledged meeting with Complainant on that date and agreed, contrary to his previous letter of May 6, 2002, to undertake representation of Complainant with the acknowledged receipt of a $150 retainer instead of the $1000 previously proposed. Respondent was aware that the Complainant had limited income and agreed to allow the Complainant to make payments as she was able. Petitioner's exhibit 1, tab 3.

"5. Subsequently, Respondent prepared a Petition to Set Aside or Modify a Consent Custody Order Dated April 29, 2001 with the Circuit Court for Anne Arundel County, Case No. C–98–47502 DV, and filed it on January 24, 2003. Petitioner's exhibit 1, tab 9–32. Respondent supported his Petition with an affidavit from Complainant, declarations of persons who knew Complainant to the effect that she exhibited no signs of mental illness and a Memorandum of Law. Respondent's theory of the case was that Complainant had been falsely diagnosed with bipolar disorder with paranoid tendencies, that the licensed psychologist who made the diagnosis was incompetent to do so, and that the psychiatric community is engaging in 'pseudo science' when diagnosing and treating mental disorders.

"6. In preparing the Petition, Respondent did not consult the Maryland Rules, statutes or case law concerning child custody.

"7. The Memorandum of Law cited no statutes, cases or court rules. Rather, it discussed Complainant's history as an immigrant to the United States, cross-cultural differ-

ences vis-a-vis marriage, alleged mental and physical abuse she had suffered from her ex-husband and an attack on the licensed psychologist's competence to administer and interpret the psychological evaluation given to Complainant. He concluded the Memorandum with an attack on the psychiatric profession and supplied references to works of academic psychologists as well as copies of articles from newspapers and academic journals. Respondent has stated that he did not intend to retain any expert witnesses to rebut the Complainant's psychological evaluation because he wanted to spare Complainant the expense and because he believed members of the psychological profession are hesitant to testify against one another.

"8. Complainant relied on Respondent to determine the correct legal actions to take. On or about March 6, 2003, Complainant received a billing statement from Respondent seeking payment in excess of $25,000. Complainant refused to pay the bill and terminated Respondent's services.

"9. On or about December 15, 2003 Respondent received a telephone call from Complainant's ex-husband informing Respondent that the Complainant had testified under oath that Respondent had given her advice that it was legal for her to obtain a copy of her ex-husband's credit report. Respondent assumed that Complainant's testimony had been given during a hearing. Respondent denies ever having given Complainant such advice and considered her statement to be 'defamatory.'

"10. On or about December 18, 2003, Respondent filed suit in the District Court of Maryland against Complainant for his unpaid fees. The Complainant prayed a jury trial before the Circuit Court and Respondent amended his Complaint to add a count for defamation, praying for compensatory and punitive damages. Petitioner's Exhibits 5 and 6.

"11. Respondent has been the subject of earlier disciplinary proceedings in California and Maryland. Respondent was charged with various acts of professional misconduct during his practice in California for which, on August 22,

1990, the Supreme Court of California suspended him from practice for three years. The execution of the suspension was stayed and Respondent was placed on probation for three years on condition that he be suspended for 90 days and complied with various other conditions. The misconduct grew out of several complaints involving his willful failure to perform his professional duties, to refund unearned fees, to communicate with clients or withdraw from representation in a proper and timely manner. *See Attorney Grievance Commission of Maryland v. William Henry Manger*, Misc. Docket (Subtitle BV) No. 32 (Md. Ct.App. filed June 25, 1993) (Per curiam). Petitioner's Exhibit 7.

"12. In 1993, Respondent was suspended from practice in Maryland for 90 days as a result of the California suspension. Respondent subsequently applied to the Maryland Court of Appeals for reinstatement and his petition was granted by Notice and Order dated September 12, 1994. Petitioner's Exhibit 7.

"13. Respondent states that his financial circumstances require him to continue to practice law for as long as possible. A lack of work and income, at the time he was engaged by the Complainant, was the principal motivation for accepting Complainant's matter.

"14. Respondent has recently developed and has the potential to develop significant new business, all of which is transactional in nature and generally falls within his previous legal experience. Respondent's Exhibit 1."

The respondent and the complainant also testified, as to which the hearing court found, by a clear and convincing standard, the following.

The complainant and the respondent disagreed as to the number of times, and when, the respondent billed the complainant. She contended that she received only one bill from her engagement of the respondent in November 2002 to March 2003, while the respondent maintained that he sent three. The court determined that he sent two, finding the respondent's testimony as to the November bill he claimed to

have sent not to be credible: *inter alia,* perusal of the bill revealed time and expenses that post-dated the date of the bill and the "language" of the cover letter to the January bill, which the court found was sent to the complainant, "makes it clear that the January statement was the initial statement sent to" the complainant.

The hearing court also made findings with regard to the value of the respondent's work to the complainant as well as its nature and significance:

"A significant portion of Respondent's activity, for which he billed his client, was aimed at educating himself on mental health issues, so that he could challenge the opinions of Dr. Gombatz, which had been relied upon by the court in earlier proceedings. However, the knowledge gained by Respondent as a result of this research would have had limited utility in the presentation of his client's case. It might have been useful for Respondent to have a general understanding of the mental health issues involved in the case in order to effectively examine witnesses. However, Respondent's education at his client's expense went too far. It should have been apparent to the Respondent that he would not be a witness in the case and that educating himself was not a substitute for presentation of expert testimony on the mental health issues.

"The bulk of Respondent's research was of a general nature and should not have been billed to the client. A client who engages counsel has a right to expect that the attorney will have sufficient general knowledge to competently represent her. While it may be appropriate to charge a client for case-specific research or familiarization with a unique issue involved in a case, general education or background research should not be charged to the client.

"Similarly, the significant amount of time that Respondent devoted to preparing a memorandum to accompany the Petition to Set Aside or Modify the Custody Order, as well as the submission of witness declarations in support of the Complainant, were essentially pointless. While it might have been useful to interview potential witnesses and even

obtain their statements for his file, Respondent should have realized that these declarations consisted of inadmissible hearsay. The trial court could not have considered the declarations to prove the substance of the witness statements.

"The Court also finds that the Complainant was excessively billed for administrative activities and other items that should have been absorbed as office overhead, such as looking up zip codes, making up Rolodex cards and the like. Complainant should not have been charged for such items at all, and certainly not at an attorney's hourly rate."

The quality of the respondent's work on behalf of the complainant and, therefore, his competence did not escape scrutiny. Noting that, in representing the complainant in her attempt to have a custody order, entered by consent more than a year earlier, modified, the respondent was required to "establish that a material change in circumstances has occurred," the hearing court found that, instead, the "Respondent focused his significant efforts on a quixotic attempt to establish that the court was wrong when it entered the custody order in the first place." Although the respondent's efforts were extensive, they were not the efforts of a competent lawyer, for such a lawyer would not have failed to recognize the lack of viability of that approach. That he did not, the hearing court determined, indicated that the respondent "failed to demonstrate the knowledge, thoroughness, skill, and preparation required of a competent attorney with respect to his representation of the Complainant."

As indicated the hearing court was satisfied that the respondent's efforts were extensive. It also found that he "worked extremely hard on behalf of his client," communicating with her regularly; during the representation he was in communication with the complainant, through face to face meetings, e-mails letters and telephone calls, on more than fifty occasions. Thus, the hearing court found: "while the Respondent's efforts may have been largely pointless, there can be no doubt that they were substantial. There was no indication that the

client was ever concerned that she was not being kept up-to-date about the progress of her case."

Based on the foregoing factual findings, the hearing court concluded that the respondent violated Rules 1.1, 1.5(a), 3.1 and 8.4(d). As to Rule 1.1, the respondent conceded that it was violated by his conduct of the representation of the complainant, acknowledging, "on reflection, the relevant rules of court, rules of evidence, case law, and the Maryland Rules of Professional Conduct demonstrate that his theory of the case, strategy, tactics and time expended on the matter were erroneous and misplaced and did not rise to the level of competent representation...." The Rule 1.5(a) violation was based on his bills to the complainant being excessive and unreasonable, consisting of "billings [that] included extensive activity that would not further the goals of the client, ... constitut[ing] general background readings not billable to a client and clerical and administrative tasks that should be a part of the attorney's general overhead." Bringing an action for defamation against his former client, without having conducting legal research into its viability and without appreciating that "Maryland law provides for a broad privilege for allegedly defamatory statements in judicial proceedings," or that doing so "likely [would] erode the public confidence in the legal profession," sufficiently supported the Rule 3.1 and 8.4(d) violations. The respondent conceded the appropriateness of the trial court's conclusion that his conduct in this regard was prejudicial to the administration of justice.

On the other hand, the hearing court determined that the respondent did not violate Rules 1.3 or 1.4(b). As to the former, the court was satisfied that, despite his other short-comings,[10] [the respondent] acted with extraordinary diligence and promptness in representing [the complainant]." That this was so was reflected in the respondent's billing statements.

---

10. The hearing court rejected the argument that the lack of diligence was reflected in the respondent's failure to familiarize himself with the law and rules controlling the subject of his representation. That, the court opined, "resulted from a lack of competence rather than effort, however misguided."

While the respondent's compliance with Rule 1.4(b) was not perfect, the hearing court was not persuaded that the delay, from November to January, in submitting a billing statement, required to be submitted monthly, was a violation, "particularly in view of the frequent communications between the parties," which was established by the billing statements themselves.

The hearing court noted that the respondent had a disciplinary history. He was disciplined in 1990 by the Supreme Court of California for "various acts of professional misconduct during his practice in California." As a result, in 1993, this Court imposed reciprocal discipline, a 90 day suspension.

There also were mitigating circumstances in this case, the hearing court found:

"With respect to the instant case, there was no contention that Respondent's misconduct resulted from a physical or mental impairment. The Court concludes that Respondent did not act in bad faith and had no intention to defraud or injure Ms. Miller. Respondent has expressed contrition on the witness stand and has cooperated with the AGC by admitting violations of the applicable disciplinary rules. Respondent's offer to seek guidance from a mentor with respect to his transitional practice, take courses in professional responsibility and the Lawyers' Rules of Professional Conduct and refrain from handling litigation matters in the future shows a willingness to begin rehabilitation so that future rule violations will not occur."

The petitioner filed Petitioner's Recommendation For Sanction. In that pleading, it noted its exception to the hearing court's failure to find that the respondent acted in bad faith and with intent to defraud or injure the complainant, maintaining that clear and convincing evidence to that effect was shown by the respondent's undertaking of the representation without sufficient general knowledge competently to do so, the fact that the respondent's principal motivation for undertaking the representation was lack of work and income, and the filing, by the respondent, of a defamation claim against the complain-

ant, a claim that was both unfounded and, therefore, frivolous. Necessarily, therefore, to the extent that the respondent's intent to defraud or injure formed the basis of the hearing court's finding of mitigation, the petitioner disputed it. Moreover, it questioned the respondent's contrition, as found by the hearing court, noting his answer to the petition in which he denied any misconduct and his failure to reimburse the complainant for attorneys' fees she incurred in defending the defamation action or to refund a portion of the fees she paid him. As to the latter, the petitioner asserts, "[i]t is difficult to understand how Respondent justifies retaining these funds in light of his acknowledging his services were incompetent and therefore of little or no value to the client."

Adding the respondent's prior California, and this Court's reciprocal, suspension to the foregoing, the petitioner recommends that the respondent be indefinitely suspended, with reinstatement conditioned upon his repayment to the complainant of the fees he charged and the reimbursement of her attorneys' fees in defending against the respondent's defamation action.

The respondent took no exceptions. He did file, however, Respondent's Response To Trial Court's Findings Of Fact And Conclusions Of Law And Petitioner's Recommendation For Sanction. Maintaining that the record reflects, as the hearing court determined, the exact opposite of what the petitioner contends to be the case, the respondent urges this Court to reject the petitioner's exception. He stresses the lack of any suggestion in the record or findings of an intent to defraud or injure and, in fact, the opposite finding by the hearing court. If the petitioner's exception were sustained, he adds, "every case of professional negligence or incompetence [would be converted] into an intentional tort or species of fraud." While not denying that he was intending to enrich himself at the expense of his client, that is, after all, what the fee does, the respondent maintains that the record does not support that that was his only motivation or that the fee, reflected in the time and effort he expended to earn it, "[was] out of all proportion to what could be achieved to serve his

client's objectives." With regard to the defamation action, the respondent states that his "real intention in adding the defamation count to his suit for legal fees was to rebut the insinuation that he had given his client illegal advice and to protect his professional reputation." Nor does the respondent believe his failure to refund a portion of the fee the complainant paid him evidence a lack of contrition for his misconduct. He believes that he earned some of the fee and, "[b]ased on the record, there is no way for Petitioner to determine exactly how much of the $25,000 purported fee Respondent claimed from the Complainant he in fact 'earned.' "

Although acknowledging his prior discipline and that the type of misconduct in which he has been found to have engaged alone warrants, ordinarily, an indefinite suspension, the respondent nevertheless seeks "a lesser sanction than indefinite suspension due to the circumstances of this case." He does so based on the unique circumstances of this case, the steps he has agreed to take to ensure that he does no further harm to the public,[11] and the fact that the prior discipline was ministerial, being the result of conduct that did not occur in Maryland, and remote in time.

We shall overrule the petitioner's exception. There is ample evidence to support the findings of fact made by the hearing court and, just as important, those factual findings justify the conclusions drawn from them. Exceptions will be overruled when the findings are not clearly erroneous, *Attor-*

---

11. The respondent testified in mitigation, and the hearing court acknowledged, that

"He is prepared to take remedial steps and place significant limits on his future practice, including (1) taking academic or continuing legal education courses in professional responsibility; the Maryland's Lawyers' Rules of Professional Conduct and such other courses as the Court of Appeals shall direct; (2) if a present or future client presents him with a matter requiring litigation, Respondent will immediately associate with or refer the matter to a lawyer experienced in the type of litigation involved; and (3) to seek a mentor from the Business Law Section of the American Bar Association or the Maryland State Bar Association to provide him with oversight concerning his transactional practice."

*ney Grievance Comm'n v. McCoy,* 369 Md. 226, 235, 798 A.2d 1132, 1137 (2002). *See Attorney Griev. Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997) *(citing Attorney Griev. Comm'n v. Goldsborough,* 330 Md. 342, 347, 624 A.2d 503, 505 (1993)), and the conclusions are supported by the facts found.[12]

 Turning to the question of the appropriate sanction for the misconduct found, we reiterate the well settled standard that guides that decision. The purpose of attorney disciplinary proceedings is to protect the public and not to punish the erring attorney. *Attorney Grievance Comm'n v. Velasquez,* 380 Md. 651, 660–61, 846 A.2d 422, 427–28 (2004); *Attorney Grievance Comm'n v. Tinsky,* 377 Md. 646, 653, 835 A.2d 542, 546; *Attorney Grievance Comm'n v. Franz, et. al.,* 355 Md. 752, 760–61, 736 A.2d 339, 343–44 (1999) *Attorney Grievance Comm'n. v. Myers,* 333 Md. 440, 446–47, 635 A.2d 1315, 1318 (1994); *Attorney Grievance Comm'n v. Goldsborough,* 330 Md. 342, 364, 624 A.2d 503, 513 (1993); *Attorney Grievance Comm'n v. Protokowicz,* 329 Md. 252, 262–63, 619 A.2d 100, 105 (1993); *Attorney Grievance Comm'n v. Myers,* 302 Md. 571, 580, 490 A.2d 231, 236 (1985); *Attorney Grievance Comm'n v. Velasquez,* 301 Md. 450, 459, 483 A.2d 354, 359 (1984); *Attorney Grievance Comm'n v. Montgomery,* 296 Md. 113, 119, 460 A.2d 597, 600 (1983). What the appropriate sanction for the particular misconduct is, in the public interest, generally depends upon the facts and circumstances of the case, as the facts and circumstances of a case will determine how severe the sanction should be. *Attorney Griev. Comm'n v. Babbitt,* 300 Md. 637, 642, 479 A.2d 1372, 1375 (1984); *Montgomery,* 296 Md. at 120, 460 A.2d at 600; *Attorney Griev. Comm'n v. Pollack,* 289 Md. 603, 609, 425 A.2d 1352, 1355 (1981). The attorney's prior grievance history, as well as facts in mitigation, constitute part of those facts and circum-

---

12. Although phrased as a finding of fact, the hearing court's "finding" with respect to the intent with which the respondent acted is really a mixed question of law and fact. The facts from which the conclusion is drawn are largely not in dispute; certainly it is not contended that the court was clearly erroneous in its fact-finding.

stances. *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 362, 347 A.2d 556, 561 (1975). The public interest is served when a sanction designed to effect general and specific deterrence is imposed on an attorney who violates the disciplinary rules. *See Protokowicz,* 329 Md. at 262–63, 619 A.2d at 105; *Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 355, 587 A.2d 511, 521 (1991); *Attorney Grievance Comm'n v. Alison,* 317 Md. 523, 540–41, 565 A.2d 660, 668 (1989).

Notwithstanding our overruling of the petitioner's exception, we nevertheless believe that the appropriate sanction is an indefinite suspension, as the petitioner has recommended and which the respondent has conceded to be the typically mandated one for conduct of the nature in which he engaged. We do not believe that the arguments the respondent offers for a lesser sanction carry the day. Although neither the conduct in which the respondent was found to have engaged nor the rule violations it was found to constitute rises to the level of conduct or violations warranting disbarment, the misconduct is quite serious and can not be condoned. Moreover, we are not satisfied that the circumstances of this case are of sufficient uniqueness as to justify, much less require, the imposition of a lesser sanction. Certainly, the fact that the only prior violation, and the sanction in respect thereto, is not recent is relevant, but it is difficult to attribute substantial mitigating weight to the fact that it was not incurred in this State, and it cannot be, in any event, characterized as ministerial. Whether the "safeguards" the respondent has proposed will have the anticipated effect can be, and indeed must be, judged in the light of subsequent events. Thus, their efficacy and desirability, as well as their exact nature, may be, and, perhaps, should be addressed, when the decision to readmit him is considered. This is consistent with what we did, and said, in *Attorney Grievance Comm'n v. Black,* 362 Md. 574, 580, 766 A.2d 119, 123 (2001):

"We decline ... the petitioner's invitation to delineate specific conditions of reinstatement, except the payment of costs, a condition in any event, whether stated or not, preferring to reserve to ourselves the broadest discretion to

review, at the time of application, the respondent's fitness for reinstatement. By not specifying a monitor, or any of the other recommended conditions, as prerequisite for reinstatement, however, we do not mean to suggest that they are not appropriate or should not be done. We simply will not now express an opinion on the matter of what is, or will be, required for reinstatement."

*See also Attorney Grievance Comm'n v. Holt,* 894 A.2d 602, 605, 391 Md. 673, 678 (2006).

Accordingly, the respondent is ordered indefinitely suspended from the practice of law.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST WILLIAM HENRY MANGER.